W. A. CARNS, Plaintiff and Appellant, v. Mrs. C. L. PUFFETT, Formerly Elizabeth A. Evans, Defendant, NETTIE A. ISHAM, Intervener and Respondent.

(176 N. W. 93.)

**Specific performance — no legal written agreement found upon examination of letters and other correspondence.**

1. The plaintiff brought an action of specific performance to compel the defendant to convey to him by deed certain real estate which she owned, and which plaintiff claims to have purchased from her. It is claimed by plaintiff that there exists between them a binding, written contract of sale.

He bases such claim upon certain letters written by him to defendant, and answers received thereto from her, and upon other letters written by her to him: *Held*, on examination of all such letters and other evidence in the case, that, for the reasons stated in the opinion, no legal, written agreement between them, for the sale of the real estate, was made.

**Vendor and purchaser — where the intervener bought the land and paid full purchase price thereof the intervener became the legal owner of the premises.**

2. The defendant sold the real estate to Nettie A. Isham, the intervener, and received the full purchase price thereof, and delivered a deed of the

premises to her: *Held*, that the intervener, for the reasons stated in the opinion, became the legal owner, in fee simple, of the premises.

Opinion filed January 5, 1920.

Appeal from District Court of Dunn County, Honorable *W. C. Crawford,* Judge.

Judgment affirmed.

*W. A. Carns* and *L. A. Simpson,* for appellant.

A definite and unconditional acceptance in the option (offer) is not avoided or rendered uncertain or conditional by matter contained in the acceptance concerning the method of performance, or where payment should be made, etc.   Horgan v. Russell, 24 N. D. 490; 33 W. Va. 738, 11 S. E. 220.

If, contemporaneously with or subsequent to the making of the contract, either party suggest, request, or propose a time, place, or mode of performance different from that agreed upon, that does not of itself effect such change, nor does it cause a breach, giving right of action or rescission to the other party.   Swiger v. Hayman, 48 S. E. 839; Turner v. McCormick, 67 L.R.A. 853, and cases cited therein; Kruetzer v. Lynch, 122 Wis. 474, 100 N. W. 887; Matteson v. Schofield, 21 Wis. 671.

*T. F. Murtha,* for the intervener.

At what place the price was to be paid was a part of the offer.   The defendant was entitled to have the price paid to him simultaneously with the delivery of the deed, and he was not obligated to go to any bank for payment nor to communicate a deal with the bank before the price was paid.   The following authorities fully sustain these principles:   Harris Bros. v. Reynolds, 17 N. D. 16, 114 N. W. 369; Gilbert v. Baxter, 71 Iowa, 327, 32 N. W. 364; Northwestern Iron Co. v. Meade, 21 Wis. 480, 94 Am. Dec. 557; Batie v. Allison, 77 Iowa, 313, 42 N. W. 306; Wristen v. Bowles, 82 Cal. 84, 22 Pac. 1136; Weaver v. Burr, 31 W. Va. 736, 3 L.R.A. 94, 8 S. E. 743; Baker v. Holt, 56 Wis. 100, 14 N. W. 8; Wilkin Mfg. Co. v. H. M. Loud & Sons Co. 94 Mich. 158, 53 N. W. 1045; National Bank v. Hall, 101 U. S. 43, 25

L. ed. **822**; Russell v. Falls Mfg. Co. 106 Wis. 329, 82 N. W. 134; Langellier v. Schaefer, 36 Minn. 361, 31 N. W. 690; 39 Cyc. 1195.

"There is no contract so long as the parties are merely negotiating, by correspondence or otherwise, to settle the terms of an agreement, intending to enter into a formal and final agreement, when the terms shall be settled." 39 Cyc. 1183, 1190, 1192; Gilbert v. Baxter (Iowa) 32 N. W. 365; Sawyer v. Brossart (Iowa) 25 N. W. 867; Langellier v. Schaefer (Minn.) 31 N. W. 690; Foss Invest. v. Aterm (Wash.) 95 Pac. 1017.

If no place is specified in the offer for payment of the purchase money and delivery of the deed, it is implied that payment is to be made and the deed delivered at the place of residence of the vendor or his agent, and an acceptance fixing a different place is had as varying from the offer. Arnett v. Tuller, 134 Ga. 609, 68 S. E. 330; Robinson v. Weller, 81 Ga. 704, 8 S. E. 447; Gilbert v. Baxter, 71 Iowa, 327, 32 N. W. 364; Sawyer v. Brossart, 67 Iowa, 678, 56 Am. Rep. 371, 23 N. W. 867; Hinnish v. Oliver, 66 Kan. 282, 71 Pac. 520; Greenewalt v. Este, 40 Kan. 418, 19 Pac. 803; De Jonge v. Hunt, 103 Mich. 94, 61 N. W. 341; Bagger v. Nesbitt, 122 Mo. 667, 42 Am. St. Rep. 596, 27 S. W. 385; Ross v. Craven, 84 Neb. 520, 121 N. W. 451; Lopeman v. Colburn, 82 Neb. 641, 118 N. W. 116; Beiseker v. Amberson, 17 N. D. 215, 116 N. W. 94; Stearns v. Clapp, 16 S. D. 558, 94 N. W. 430; Foss Invest. Co. v. Ater, 49 Wash. 446, 95 Pac. 1017; Curtis Land, etc. Co. v. Interior Land Co. 137 Wis. 341, 129 Am. St. Rep. 1086, 118 N. W. 853; Baker v. Holt, 56 Wis. 100, 14 N. W. 8; Northwestern Iron Co. v. Meade, 21 Wis. 474, 94 Am. Dec. 557; Lacey v. Thomas, 164 Fed. 623; Sherp v. West, 150 Fed. 458; 39 Cyc. 1197.

GRACE, J. The action is one for specific performance. The complaint in substance avers that on or about the 5th day of April, 1918, the defendant entered into a written contract with the plaintiff to sell him lot 6, block 2, in the town of Manning, county of Dunn, this state, for the sum of $500; that the defendant agreed to deliver a good title to the premises by delivery of a deed, the premises to be free from encumbrances; whereupon the plaintiff should execute and deliver

to the defendant a mortgage on the premises for $500, to secure his note for that sum.

The plaintiff furthers avers his readiness and willingness to perform the terms and conditions of his contract, and in connection avers that he has deposited his promissory note for $500, dated April 22, 1918, due December, 1918, which draws interest at 8 per cent per annum, secured by a mortgage on the premises in question, and deposited the same with the First State Bank of Manning, with instructions to the bank to deliver such papers to the defendant, when she delivered a warranty deed to the bank, transferring the property to the plaintiff.

The complaint further shows that the plaintiff went into possession of the premises, under the contract, and performed certain work thereon, and made certain improvements to the value of $37.35; and it further shows of the refusal of the defendant to deliver to plaintiff a deed for the premises.

The defendant made no appearance and filed no answer to the case. A complaint in intervention, however, was filed by Nettie A. Isham, which shows that, on May 6th, the defendant was the owner in possession of said lot 6, block 2; that, on the said day, for valuable consideration, she conveyed the premises by warranty deed to the intervener, which deed was, on May 10, 1918, duly recorded in the office of the register of deeds of Dunn county.

The intervener further avers that since May 6, 1918, she has been the owner, in fee simple absolute of the premises. To the complaint of intervention, the plaintiff answered, and properly placed at issue, the allegations therein complaining, and reavers his purchase of the lot in the manner described in his complaint.

The material facts in the case are very few and easily stated, and are as follows: March 29, 1918, the plaintiff wrote Mrs. Puffett a general letter, in which he referred to the party who had the house rented (which, as we infer, was the house on said lot 6), and stated that he had spoken to the plaintiff about trading it for the place where the plaintiff was then living; and further stated that the plaintiff had been over to look at the house, with the idea of renting the same for the following year. He then made reference to the bad condition of the house, stating that the plaster was cracking, some of it off, etc.

The material part of the letter, as far as this case is concerned, is as follows: "I have never bought a place here in Manning, as I always considered it would be a poor investment, but I have about concluded to buy a place if I can get it right.

"I have not very much ready cash at present, and, if you desire to sell your place, I will give you my note for $500, due on or before next December 1st, at 8 per cent, secured by a mortgage back on the place.

"I cannot offer any cash on the deal, as I would want to plaster the house, paint it, and build a garage, which would take about all the cash I have on hand.

"If you do not want to sell as per my proposition, I will rent the place for the year, at $12 per month, if you fix it up and build me a small garage.

"Kindly let me hear from you at once, as my lease for the property on which I now live will soon expire, and I would like to know definitely about your place before my rental term is up."

The foregoing letter was received by Mrs. Puffett at Oxford, New York, on April 5th. She replied to the letter, and what is material in her reply letter is as follows:

"Just received your letter to-day, and will answer at once, as your letter had to be forwarded, and it will take some time for answer to reach you.

"Regarding the house, I have been thinking of selling it, as it is so far away, and not an easy matter to get anyone to look after it; so, if you want it, I will accept your proposition. I have had so many things to see to this winter, that I neglected to pay the taxes before the penalty went on, and, if you will pay the taxes, I will turn you the insurance policy I am just having made out; it is for three years, and will be more than the taxes ever have been.

"The record shows a mortgage against it, but that can be taken up any time. If you decide to take it, will you please send me some North Dakota blanks to make out, as they are a little different in each state, and they may not be up to North Dakota ways here. You can send your mortgage and note direct to me, to the First National Bank of Oxford, New York, and I will do likewise."

The remainder of this letter is not material to this case.

On April 18, 1918, the plaintiff wrote the defendant the following letter:

"Your letter of April 5th reached me in due time, in which you stated you will accept my offer of $500 for your property here in Manning, to wit, lot 6, block 2. I have drawn a warranty deed for your convenience; also a satisfaction of mortgage, which kindly send to the mortgagees, and have them send the same to the First State Bank here (Manning). Kindly sign the deed the same as I have drawn it, and have Mr. Puffett sign the same, as I have written his name. Be sure and date the deed, acknowledge the same before the notary public, and see that he dates the acknowledgment and fills in the date of the expiration of his commission. A great many notaries fail to do the latter.

"Send the deed to the First State Bank here (Manning). When the satisfaction reaches here, I will deliver the note and mortgage for $500 to the said bank. This will be the simplest and most convenient way for both of us, I believe.

"The taxes for the last year have not been paid, as you stated, and I will pay the same, provided you turn over the insurance policy, but the property is not insured yet, and I understand that the bank here is supposed to write the same as soon as they collect the rent from Mr. Etherton, the party who is living in the house at present, but it is doubtful if said party will pay the rent for sometime, as he is practically worthless financially, and, if you are willing, I will insure the property, and you may give me credit on my note for the premium.

"I notice you stated you were willing to insure it for three years, and assign the policy to me. If I insure it, and you give me credit for the premium, it will amount to the same thing.

"Mr. Kapelovitz told me he had not written the policy, and did not know when he would, as he had not collected rent, and did not know when he would be able to do so. There is considerable danger from fire, as you know we have no protection whatever, and I do not wish to run the risk without insurance, indefinitely."

The remainder of the letter is irrelevant, with the exception of a postscript written with pen and ink, at the bottom of the foregoing letter, which was typewritten, and which is as follows:

"Kindly hurry the paper to the bank as soon as possible, as I am

anxious to get the house fixed up and moved," which means that he was anxious to get the house fixed up and was anxious to move into it.

On April 26, 1918, Mrs. Puffett wrote the plaintiff the following letter:

Yours of the 18th received and noted. I wish it had reached me a few days sooner. Just after I wrote you, I received a cash offer on the house. I held up the answer, so that until two weeks, and from Friday until Tuesday, waiting to hear from you, as your first letter had to be forwarded to me, which took longer, and you wrote you had some deals sort of hanging fire. I fully believed some of those had materialized, or I would have heard from you sooner; therefore, I wrote the other parties they could have the house, as I am anxious to get squared around one way or the other. As I waited so long to answer them, they may have changed their mind about it, also. If they do take it, they will fix it up to rent, so you may rent it anyway.

I am sorry if I have put you out any. Yet it will spoil your plans more or less anyway, but, under the circumstances, I think you would have done the same.

Trusting this proposition may come out all right for you, and wishing you success, I am,

Yours truly,<br>Mrs. C. L. Puffett.

The letter contained some immaterial matter not included. In answer to this letter, plaintiff wrote defendant the following letter, which bears the date of April 29, 1918:

"Your letter of the 26th inst. is at hand, and I note that you say you have sold the house, which I sent you a deed for recently, to be executed. Now, in my letter of Mar. 29 last, I made you an offer, which you accepted by your letter of April 5th; this constituted a contract of sale, and I went ahead and did considerable work on the property, cleaning it up, and having the plastering repaired; also the chimney, and, of course, I fully expected you to go ahead with the deal and execute the deed.

"I sent you telegram to-day as follows, and this is to confirm the same.

" 'Manning, N. Dak. April 29, 1918, Mrs. C. L. Puffett, Chenango County, N. Y.:—Have done work on property, and expect deed.' "

As we read the matter, this was all of the telegram. The letter then continues:

"Now, I did not desire to cause you any trouble or expense in the matter, but I have been to considerable expense and trouble, and I shall be compelled to protect myself in the matter.

"I do not know who could have made you the offer on the property, but am of the opinion that it is someone who desires to spite me, as this is their game. I shall cause them considerable trouble before they get the property.

"I am certainly sorry you got into this double deal, but you should have telegraphed or written to me before you sold the property to another party, who made you an offer after you had accepted my proposition, as by doing so you sold the property to them after you had sold it to me. But I believe you will be able to settle the matter by simply notifying the party that you had sold the same to them by mistake, and that you cannot execute the deed to them, and I do not believe they will go to any expense in trying to compel you to execute the deed, and they look into the matter as they undoubtedly know I had purchased the property of you before they made you the offer, and they thought they could jump in ahead of me, and do me some dirt, regardless of the consequences to you.

"Now to show you that I am right with you, and, if you execute this deed as per our agreement, and the second offerer should attempt to make you any trouble, I will defend the action for you, free of charge for my services.

"I have made all plans to live here in said house this summer, and I intend to do so, even though it may cause you some trouble and expense, I expect a wire from you to-day in reply to my telegram, and my future actions shall depend on that answer.

"Trusting that you will get this matter settled without any trouble, I remain,

"Yours truly,"

The appellant has assigned five errors, in one of which it is contended that the decision of the court is against the law. It is further

claimed that the evidence is insufficient to support the findings of fact, the conclusions of law, and the judgment; and that the court erred in giving and entering judgment.

We are of the opinion that these contentions are certainly without merit. In order for the plaintiff to establish a case, it is incumbent upon him to show that he entered into a valid, binding, written contract with the defendant, for the purchase of the lot in question.

The only claim of a written contract is that founded upon the letters passing to and fro between the plaintiff and the defendant. In order for those letters to constitute a contract between the parties, there must have been a meeting of their minds upon the terms of sale of the premises; that is, there must have been an offer, on the part of the plaintiff to the defendant, to purchase the premises upon certain specified terms, which were accepted without qualifications by the defendant, or there must have been an offer to sell the premises to the plaintiff, by the defendant, upon certain terms which were unqualifiedly accepted by the plaintiff.

It clearly appears from the letters that the minds of the plaintiff and the defendant never met upon the terms and conditions of the sale of the premises. It is true the plaintiff offered to pay the defendant $500 for the premises, the purchase price to be evidenced by the plaintiff's promissory note, secured by a mortgage upon the premises. It is also true that the defendant wrote plaintiff and accepted his offer as to price and method of payment, but specified certain terms, with which she asked the plaintiff to comply.

These terms were that plaintiff should send his note and mortgage to her personally, or to the First National Bank of Oxford, New York, and she would do likewise, meaning thereby, we presume, that she would deliver her deed to the bank, together with an abstract and a satisfaction of the mortgage against the premises.

The requirement by the defendant that the plaintiff pay the taxes, under the conditions named by the defendant, and that he send his note and mortgage to the First National Bank at Oxford, New York, where she would deliver her deed to him, together with an abstract and a satisfaction of the mortgage, constituted terms of the proposed contract, and were not matters merely relating to the execution and performance of it.

If the plaintiff upon receiving this letter had sent his mortgage and note, and had paid the taxes as directed by the defendant, he would be then, legally speaking, in the position which he now claims, but in which we think he is not. The defendant as the owner of the property had a perfect right to impose those terms, and in so far as she did do so she rejected plaintiff's proposition, in so far as it was inconsistent or in conflict therewith.

The plaintiff, however, instead of accepting her terms, replied by proposing others, by asking her to send the deed, abstract, and a satisfaction of the mortgage, to the First State Bank of Manning, where he would deliver the note and mortgage.

The plaintiff also made a counter proposition, as to the method of disposing of the taxes, which were unpaid, than that directed by the defendant. At this point, the negotiation as to terms between the parties terminated, and it is clear their minds had not met upon the terms and conditions of the sale of the premises.

There was no contract, for proposals and counter proposals of terms desired in a contract do not constitute a contract until the minds of the parties thereto agree upon and accept them. The letters conclusively show there was no contract, nor binding obligation concluded between the parties. Further discussion cannot aid this conclusion, nor make it more clear.

Some two weeks after the plaintiff had written his counter offers, the defendant, without knowing, and before she had received notice of them, sold the premises to the intervener, and received from her $500, the purchase price, which was delivered to defendant at First National Bank of Oxford, New York, where defendant and her husband, on the 6th day of May, 1918, delivered their deed of the premises to the intervener, which was sent by the bank to her, and by her duly recorded; and she thereby became the legal owner, in fee simple, of the premises in question.

However, had defendant known, at the time she accepted the money from the intervener and delivered her the deed, that the plaintiff was making counter proposals, or if she, at that time, had his letters in which he made such counter proposals, she could nevertheless have sold to the intervener the premises in the manner in which she did, and

thereby have been under no obligations whatever to the plaintiff, for she had entered into no binding or legal agreement with him to sell him the premises; this, for the reasons above stated.

Hence, the notice which plaintiff served upon the defendant by letter and telegram, and the filing of the lis pendens, availed him nothing. He had acquired no legal nor equitable interest or claim in the land, and the intervener took the premises clear and free from any claim or interest of the plaintiff.

After the plaintiff had deposited his note and mortgage in the bank at Manning, and after he had notified the defendant that he intended to insist on his alleged contract and his right to the premises, and after he had knowledge of the sale to the intervener, he brought an injunction proceeding against the intervener to restrain her from interfering with his possession of the premises. In that proceeding, he gave a bond to indemnify and protect the intervener from any damages that might accrue to her by reason of the injunction proceeding.

The intervener was entitled to the possession of the premises from the time of the execution and delivery to her, by the defendant and husband, of the deed to the premises. She has been kept out of possession during all the time of her litigation, and has lost the use of the premises, and it follows, as a matter of course, that she has been damaged to the extent of the value of the use of the premises, or the rental value, which has been determined to be $10 per month, and this she is entitled to recover as damages from plaintiff. Proof of such damages having been made, she did recover therefor, and the same were properly allowed and incorporated in the judgment.

We think there is no valid reason for disturbing the expenses allowed the intervener, on account of the injunction proceeding, nor her recovery for costs.

It may be stated in conclusion that the plaintiff, as we infer from the record, while proceeding in absolute good faith in the matters involved in this case, nevertheless, as clearly appears, was entirely mistaken in his belief that he had entered into a valid, binding, written agreement with the defendant. For the reasons above stated, it clearly appears he had no such agreement with her.

Cases which support the view which we have taken of this case are

as follows: Kvale v. Keane, 39 N. D. 560, 9 A.L.R. 972, 168 N. W. 74; Beiseker v. Amberson, 17 N. D. 215, 116 N. W. 94; Ness v. Larson, 41 N. D. 211, 170 N. W. 623.

The judgment appealed from is affirmed. The respondent is entitled to statutory costs of appeal.