FIRST STATE BANK OF RAY, NORTH DAKOTA, a Corporation, Respondent, v. T. A. HARDGROVE, Appellant.

(222 N. W. 265.)

Opinion filed December 1, 1928.

*Halvor L. Halvorson,* for appellant.

*P. P. Campbell,* for respondent.

BURKE, J. This is an action for a breach of contract. A jury was impaneled, but by the consent of parties the jury was dismissed and the action was tried to the court. The trial judge made findings of fact and conclusions of law favorable to the plaintiff and the defendant appeals.

The facts are as follows: The defendant, T. A. Hardgrove, was the owner of a certificate of mortgage foreclosure sale, of a mortgage against the northwest quarter (N. W. ¼) of section 17, township 157, range 96, in Williams county, North Dakota, amounting to approximately $2,500. The plaintiff had a second mortgage against said land for the sum of $1,500. During the year of redemption there were negotiations between the plaintiff and the defendant for the purchase of defendant's certificate of foreclosure sale by the plaintiff, which finally culminated in a letter written by the defendant to the plaintiff on the 7th of November, 1924, and an answer thereto written by the plaintiff on November 14, 1924, which letters are as follows, to wit:

"I restate my proposition to you on the Lajoie property alone. I will take $1,700 in actual cash, laid down in Fond du Lac and turn over the papers to you, and you can have the next thirty days to send the money, and then I want to have some notice in advance that you are going to send the money and that the deal will go through as I do not want to pay somebody else a commission on the sale of the property: However, I had some communications from other people who want to sell the property for me, and that is the reason that I am asking you to let me know ahead of time."

"Replying to your letter of November 7th will say that you will receive $1,700.00 for the LaJoie certificate. I am returning the $50.00 draft and the Commercial National Bank, of Fond du Lac, Wis., hold $450.00 for you which they will deliver immediately upon execution of assignment of certificate. Will send them a draft for $1,200.00 just as soon as our attorney can examine the foreclosure proceedings at Williston. He has promised to do this next Monday or Tuesday

and just as soon as he reports that the foreclosure proceedings are regular a draft for $1,200.00 will be forwarded to the Commercial National Bank.

"I note you refer to the Eide property but am not prepared to consider any proposition at this time.

"Yours very truly,
"Louis T. Hagen,
"Vice-President."

It is the contention of the plaintiff that the letter of November 14th, is an acceptance of the offer made by the defendant to the plaintiff in the letter of November 7th. On the other hand, the defendant claims that it is not an acceptance of the offer; that the defendant's offer is:

"I will take $1,700 in actual cash, laid down in Fond du Lac and turn over the papers to you. . . . I want to have some notice in advance that you are going to send the money and that the deal will go through as I do not want to pay anybody else a commission on the sale of the property. . . . I had some communications from other people who want to sell the property for me, and that is the reason that I am asking you to let me know ahead of time."

It is the contention of the defendant that instead of sending $1,700 in actual cash, the plaintiff, on November 14th, returned to the defendant a $50 draft, dated September 9, 1924, which draft had passed backwards and forwards between the plaintiff and the defendant several times during the negotiations between them and was never cashed; that instead of sending the actual cash defendant was informed that the Commercial National Bank of Fond du Lac, Wisconsin, held $450 for the defendant, which would be delivered upon the acceptance of an assignment of certificate, while, in fact, the Commercial National Bank did not hold for the defendant $450, but only a draft for that amount. Defendant is further informed in said letter of November 14th, that the plaintiff will send them, meaning the bank, a draft for $1,200 just as soon as plaintiff's attorney could examine the foreclosure proceedings at Williston.

It is the contention of the defendant that the sending of a $1,200 draft to the bank is made, by this letter of November 14th, dependent

upon whether the attorney for the plaintiff renders a favorable decision on the foreclosure; that in fact said letter says in so many words:

"Just as soon as our attorney reports that the foreclosure proceedings are regular a draft for $1,200 will be forwarded to the Commercial National Bank."

The plaintiff, however, claims that the defendant, in a letter of September 24th, 1924, stated:

"I expect to have the foreclosure right in every particular."

If this statement, in the letter of September 24th, amounted to a warranty of the regularity of the foreclosure proceedings, it is clear that plaintiff did not rely upon such statement, but insisted upon having his own lawyer go over the records, and the draft for $1,200 would be sent to the bank when there was a favorable report. The $1,200 draft payable to said bank was forwarded to the bank on November 20th, but two days before, on November 18th, the bank at Fond du Lac, Wisconsin, returned the $450 draft, and accompanying the draft was a letter stating:

"These papers are returned to you at the request of Dr. Hardgrove."

So at least two days before the sending of the $1,200 draft to the bank at Fond du Lac, Dr. Hardgrove had notified the bank to return the $450 draft and papers. On November 21st, the plaintiff again forwarded the $450 draft to the bank at Fond du Lac, knowing at that time that the defendant had ordered it returned to the plaintiff.

Contracts can be made by correspondence just as binding and effective as in any other way, but the acceptance of an offer must be an unqualified acceptance. Comp. Laws 1913, § 5862. It will be noted that this letter of November 7th, states specifically that the defendant will take $1,700 in actual cash. This does not mean in drafts or checks but in actual money. He further says: Let me know ahead of time for I am dealing with other parties and do not want to pay somebody else a commission. The plaintiff waited for a full week and then returned to the defendant a $50 draft, which had passed back and forth several times. This was not cash and was not in accordance with the contract demanding actual cash. The statement that the bank had $450 for the defendant was not correct; it had but a draft for that amount and the acceptance was further qualified by the statement that a $1,200 draft would be sent to the bank when the plaintiff's attorney

made a favorable report on the regularity of the foreclosure proceedings. It appears that just about as soon as the defendant received this letter he notified the bank at Fond du Lac to return the papers, the letter of plaintiff being written on the 14th, and the bank's letter returning the papers being dated the 18th. The plaintiff's letter of November 14th was a qualified acceptance which amounted to a new proposal which was never accepted by the defendant and there is no contract. The judgment of the trial court is reversed and it is ordered that the action be dismissed.

NUESSLE, Ch. J., and BURR, BIRDZELL, and CHRISTIANSON, JJ., concur.