[File No. 7094]

PAUL E. SWANSON, Respondent, v. ESTELLA LINDER, also known as Stella Hilson, Appellant.

(33 NW2d 62)

Opinion filed June 22, 1948.

*Traynor & Traynor,* for appellant.

*Sinness & Duffy,* for respondent.

Nuessle, J. This action was brought to enforce the specific performance of an alleged contract to sell real estate. The transaction leading up to the action was conducted wholly by correspondence. The sole question is as to whether the plaintiff has such a valid and binding contract as can be enforced in an action for specific performance.

The plaintiff is a resident of Devils Lake, North Dakota. He does business under the name of Swanson Implement Company. Whether this is a partnership, a corporation, or whether it is simply a trade name under which he carries on his business does not appear. The defendant is a resident of Anchorage, Alaska. In 1945 plaintiff desired to purchase certain real estate owned by the defendant. This property adjoined property belonging to plaintiff. The plaintiff, or the Swanson Implement Company, wrote defendant offering $350 for her property. In reply to this letter defendant wrote,

"Anchorage, Alaska
Sept. 29–45

Swanson Implement Co.
Devils Lake, N. D.

Your letter in regards of the lot and old house I own there. which you offered me #350.00 for now I have read your side I will tell you my side of the story. I will sell for $500.00 cash with all tax paid and will give you a clear title what was given to me. Mrs. Maud RhnHeart has the deed to it. And if you want it I will have Mrs. RhnHeart to send the Deeds

to the first National Bank.  You place the money in the Bank in Anchorage to be paid to me soon as you received the deeds. Please let me hear from you Imediately in regards to it.

Estella Linder

P. S. the deeds are made out in former marrieyd name

Stella Hilson"

Defendant testified that she believed, although she could not positively say so, that this letter was sent by airmail.  It was received by the plaintiff.  Some three weeks after receiving it and on October 27, 1945, his attorneys, Sinness & Duffy, answered as follows,

"October 27, 1945

Mrs. Estella Linder,
Anchorage, Alaska
Dear Mrs. Linder:

Your letter to the Swanson Implement Company has been referred to us for attention. According to the tax record, you own the 25 feet south of the north 25 feet of Lots 1, 2 and 3 of Block 178 of the original townsite of Devils Lake.  However, we are unable to find your deed of record in the office of the Register of Deeds.  The last instrument we have been able to find was a final decree of distribution setting the property over to John, Fred, George and I. O. Lee.  There is also of record the power of attorney you gave to Mrs. Rhynhart.

Do you have an abstract of title to this property, and do you have the deed which you received?  Mr. Swanson is willing to pay you $500.00 for this property, if you can convey a good title.  In order to save time, it would be best for you to send the deed from yourself to Mr. Swanson, together with the abstract of title and the deed you received, to the Ramsey County National Bank here, and if those documents are sufficient to convey title, Mr. Swanson will pay over the $500.00 to the bank for remittance to you.  On the tax records, the property is shown as being owned by Stella Hillson, accordingly in signing the deed you should sign both your present name and the name under which you obtained title.

We are enclosing a deed which you may execute."
No reply to this letter was received, so on December 13, 1945, Sinness & Duffy again wrote,

"December 13, 1945

Mrs. Estella Linder
Anchorage, Alaska
Dear Mrs. Linder:
We wrote you on October 27 regarding the sale of your lot to P. E. Swanson, but we have not heard from you. We are wondering if by any chance our letter went astray."

No reply to this letter was received. Thereafter Sinness & Duffy procured an abstract of title to the property in question and wrote on June 4, 1946,

"June 4, 1946

Mrs. Estella Linder
Anchorage, Alaska
Dear Mrs. Linder:
We have finally ascertained the correct description of the lot you own, and accordingly Swanson Implement Company is now prepared to accept your proposal of September 29. We enclose herewith a deed to Paul E. Swanson, which you may sign, acknowledge before a notary public, and send to the First National Bank here, as you proposed. The deed which you had delivered to Mrs. Rhynhart could hardly be used, as it could not have been made in favor of Mr. Swanson. The $500.00 will be paid over to The First National Bank for remittance to the bank in Anchorage. Your letter of September 29 does not give the name of the Anchorage bank. The deed should be signed by you as Estella Linder, formerly Stella Hilson."

No reply to this letter was received. On June 28, 1946, Sinness & Duffy wrote,

"June 28, 1946

First National Bank,
Anchorage, Alaska
Gentlemen:
Estella Linder, formerly Stella Hilson, owns a residence property in Devils Lake described as the 25 feet north of the

south 40 feet of Lots 1, 2 and 3 of Block 178. We have been negotiating a purchase of this lot for Paul E. Swanson. They agreed on a price of $500, but we seem to have some difficulty in getting the deal completed. We have suggested to Mrs. Linder that she send a deed to a bank here, and the money would be paid on receipt of the deed. We do not know whether she is afraid to trust one of the local banks or not. If that is the case, we have no objections to sending the money to you.

We are enclosing herewith a proposed deed, and if Mrs. Linder wishes to sign this and leave the deed with you until we have remitted the $500, that will be entirely satisfactory, or perhaps you could assure her that the banks in Devils Lake would be trustworthy for a $500 transaction.

We shall be glad to remit any charges for your services."

Thereafter the First National Bank of Anchorage wrote as follows:

"September 4, 1946

*AIR MAIL*
Sinness and Duffy
Attorneys at Law
Devils Lake
North Dakota
Attention, Mr. Clyde Duffy
Gentlemen:

We have contacted Stella Linder regarding the real estate transaction covered by your letter of June 28. Mrs. Linder states that she is not interested in this offer; and we are therefore returning the warranty deed to you for disposition."

Mrs. Linder testified by deposition. She admitted writing the letter of September 29 heretofore quoted. She denied ever having received any communications thereafter concerning the matter until after August 1, 1946. She testified and there is no dispute as to this testimony, that on the 9th of June, 1946 she left Alaska and went to New York City and did not return to Anchorage until about the first day of August and up to that time she had never received any reply to the offer contained in her letter of September 29, 1945.

The sole question in this case is as to whether a contract such as can be specifically enforced can be spelled out of this correspondence. The trial court held that there was such a contract and decreed specific performance. Judgment was entered accordingly whereupon the defendant perfected the instant appeal.

The plaintiff initiated the correspondence out of which this action has grown. He first wrote Mrs. Linder and made an offer for her property. It does not appear, however, whether he wrote her under his own name or as the Swanson Implement Company. The inference is that the latter was the case since her letter of September 29 is addressed to the Swanson Implement Company of Devils Lake. Mrs. Linder responded to the plaintiff's first letter with a counter offer. It is to be noted that she evidently is somewhat unlettered. In her letter of September 29 she says she will sell for $500 cash and "will give you (her letter is addressed to the Swanson Implement Company) a clear title what was given to me". What she meant by this is somewhat uncertain, but the fair inference is that she would convey to the Implement Company, such title as she had received. She further says that "Mrs. Maud RhnHeart has the deed to it. And if you want it" she would have Mrs. Rhynhart send the deeds to the First National Bank. She does not say whether the First National Bank of Anchorage or of Devils Lake. But she follows this by saying "you place the money in the Bank in Anchorage to be paid to me as soon as you receive the deeds" so the inference may be drawn that the deeds were to be sent to the First National Bank in Anchorage. For she says that she will have Mrs. Rhynhart *send* the deeds to the bank. And Mrs. Rhynhart lived in Devils Lake. In any event, she states the money should be placed in the bank in Anchorage. She further states that an immediate response to her letter is required. The plaintiff received her letter in due course. There was a delay of several weeks, three at least, before it was answered by plaintiff's attorneys who sent a deed directing that it be made to Paul E. Swanson as grantee. The letter does not state that the defendant's offer was accepted.

It states only that "Mr. Swanson is willing to pay you $500.00 for this property, if you can convey a good title". It further states that "it would be best for you to send the deed from yourself to Mr. Swanson, *together with* the abstract of title and the deed you received, to the *Ramsey County National Bank here,* and if *those documents* are sufficient to convey title, Mr. Swanson will pay over the $500.00 to the bank for remittance to you".

It appears that there are two banks in Anchorage. One of them the First National Bank of Anchorage. The purchase price was not sent to either of these banks and it does not appear that there was any reason why the plaintiff could not have ascertained immediately upon receiving the defendant's letter what banks there were in Anchorage and whether one of them was the First National Bank. Considering the correspondence up to this point, clearly there was no certain and definite meeting of the minds such as to result in any contract at all. On the contrary the most that can be said of the plaintiff's letter of October 27 is that it was a counter offer. Plaintiff argues that there was an acceptance of Mrs. Linder's offer in that the letter of October 27, replying to that offer stated that Mr. Swanson was willing to pay $500 for the property and that the other provisions that were attached to that statement related only to matters of detail necessary in carrying out the transaction. With this we cannot agree. As a matter of fact plaintiff himself apparently was of the opinion that there had been no acceptance of Mrs. Linder's offer for on June 4, more than eight months after her letter of September 29 was received, his attorneys again wrote Mrs. Linder saying "the Swanson Implement Company is *now* prepared to accept your proposal of September 29." It is to be noted that in this letter the Swanson Implement Company is named as accepting the offer. The letter further says "we enclose herewith a deed to Paul E. Swanson, which you may sign, acknowledge before a notary public, and send to The First National Bank here, as you proposed . . . . The $500 will be paid over to The First National Bank here for remittance to the bank in Anchor-

age. Your letter of September 29 does not give the name of the Anchorage bank." Even if this were to be considered as an unconditional acceptance of the defendant's offer, and we do not think it can, it nevertheless was much too late.

In the case of Beiseker v. Amberson, 17 ND 215, 116 NW 94, this court said,

"It is an elementary principle in the law of contracts that an unqualified accepance by letter in answer to an offer submitted by letter creates a binding contract in writing. It is also equally well established that any counter proposition or any deviation from the terms of the offer contained in the acceptance is deemed to be in effect a rejection, and not binding as an acceptance on the person making the offer, and no contract is made by such qualified acceptance alone. In other words the minds of the parties must meet as to all the terms of the offer and of the acceptance before a valid contract is entered into. It is not enough that there is a concurrence of minds of the price of the real estate offered to be sold. If the purchaser adds anything in his acceptance not contained in the offer, then there is no contract. In this case there was an unqualified acceptance of the offer so far as the price is concerned. After that the acceptance advances terms by the writer as to the carrying out and execution of the contract that were in no manner contained in the offer. Among the new terms imposed by the plaintiff was the one asking the defendant to send the deed to one of the two banks named in the letter. The defendant was entitled as a matter of law to have the cash price paid to him at Snohomish, Wash., where the offer was made; and without his consent he was not compelled to send the deed to any place or bank until the price was paid. If plaintiff had accepted the offer unconditionally, his right to a deed could have been made effectual only by a tender of the price to the defendant personally; and, by requiring defendant to send the deed elsewhere, a condition was attached to the acceptance which the defendant was not under any legal obligation to comply with."

And we know of no reason why we should depart from the

principles stated and applied in that case. See also Pollak v. Roberts, 45 ND 150, 176 NW 957; Carns v. Puffett, 44 ND 438, 176 NW 93; Ness v. Larson, 41 ND 211, 170 NW 623; Ackerman v. Maddux, 26 ND 50, 143 NW 147; Harris Bros. v. Reynolds, 17 ND 16, 114 NW 369.

The judgment of the district court is reversed and the case is remanded with the direction that judgment be ordered and entered for the defendant.

CHRISTIANSON, Ch. J., BURKE, J., and MILLER and POLLOCK, District Judges, concur.

BURR AND MORRIS, JJ., did not participate.