Arthur GREENBERG, Jr.,
Plaintiff-Appellant,

v.

Alice E. STEWART et al.,
Defendants-Appellees.

Civ. No. 9128.

Supreme Court of North Dakota.

Dec. 17, 1975.

Vaaler, Gillig, Warcup, Woutat & Zimney, Grand Forks, for plaintiff-appellant; argued by Robert Vaaler, Grand Forks.

Conmy, Feste & Bossart, Fargo, for defendant-appellee Alice Stewart; argued by Charles A. Feste, Fargo.

Degnan, McElroy, Lamb, Camrud & Maddock, Grand Forks, for defendants-appellees Darrel Adams and Charles Bateman; appearance by Theo. M. Camrud, Grand Forks.

SAND, Judge.

This is an appeal from a summary judgment of the District Court of Grand Forks County for the defendant, Alice Stewart, dismissing the action brought by plaintiff, Greenberg, for specific performance of a purported contract to sell land.

The respondents, Darrel Adams and Charles Bateman, were made parties to this action because they purchased the property in question from the defendant at a public sale conducted after the contract negotiations had been carried on between the plaintiff and the defendant.

Mrs. Stewart acquired the property involved in this case as the result of a transaction with a trust fund of which she was one of the principal beneficiaries. She expressed a desire to sell her interest in the

land—which information was made known to Greenberg, who later contacted her regarding such a sale. On June 22, 1973, Greenberg submitted the following offer to Mrs. Stewart for the purchase of the property:

"OFFER

"I hereby offer to purchase from you those premises situated in the County of Grand Forks, State of North Dakota, described as the East 50% of the acreage located in the West Half of Section 18 and the Northwest Quarter of Section 19, Township 151, Range 50, on the following terms and conditions:

"1. The price to be paid shall be $400.00 an acre, it being understood and agreed that the total acreage in the above described premises is 232.135 acres more or less. The actual determination of the acreage involved shall be made by a registered engineer or surveyor at the expense of the seller.

"2. This offer shall be subject to and dependent upon your acquiring good and marketable title to the property to be purchased.

"3. The cash rent payable in the year 1973 shall be divided equally between the Seller and the undersigned.

"4. The taxes for the year 1973 shall be prorated as of the date of possession based on the 1972 taxes.

"5. This offer shall remain open and be binding upon the offeror for a period of 30 days from and after the date of acceptance by the seller, but this offer shall terminate and be null and void subsequent to that time.

"6. The seller agrees that upon acceptance of this offer she will immediately cause to be commenced all Court proceedings necessary for an exchange of property as above described.

"7. This offer must be accepted on or before the 10th day of July, 1973, to be binding on the undersigned.

"8. The undersigned recognizes that seller may wish to negotiate other terms than cash payment and the undersigned is willing to arrange for an exchange of like properties of agreed upon equal value and is also agreeable to negotiate terms of an installment sale based on contract for deed.

"9. Seller shall furnish to the buyer an Abstract of Title to said premises brought down to date showing good and marketable title in the name of the seller and the buyer shall have 15 days in which to examine such abstract to determine the marketability of the title. In the event the title cannot be made marketable, this agreement shall be void."

On August 6, 1973, Mrs. Stewart responded to Greenberg by letter, setting forth certain modifications to the offer:

"I received your offer dated June 22, 1973 and found it acceptable subject to the following modification:

"1. *Item 2* shall state my intention to provide good and marketable title to the property subject to any rights, covenants, conditions, restrictions, easements, and other encumbrances of record. I have no objections to your right to review that abstract of title within a reasonable period of time nor to your right to rescind your offer if such abstract reveals significant encumbrances.

"2. *Item 3* shall read 'cash rents to be divided pro rata based upon the fiscal year for which they were collected.'

"3. *Item 6* Due to the vagaries involved in securing judicial consents, I will use my best efforts to cause all court proceedings necessary for the exchange of property to be commenced but will not warrant all judicial consents will be given. If such consents are not obtained within 90 days either party may rescind this agreement.

"4. *Item 8* should be revised to provide for cash sale only. Upon acceptance of this contract by both parties

the buyer will deposit 10% (ten percent) of the purchase price of the property into escrow. The balance of the purchase price shall be paid in cash upon close of escrow which is to be January 5, 1974. I am currently attempting to locate and acquire investment property in California and plan to use the proceeds from this sale for that purpose. In the unlikely event that such property is located this year and it is necessary to close escrow on that property prior to January 5, 1974, I retain the right to accelerate the close of this escrow to coincide with that purchase.

"5. *Item 9* should be deleted as it is covered adequately in Item 2.

"By copy of this letter to Mr. Peter Nielsen, I am directing him to prepare a contract of sale containing the points set forth in your offer as modified by my comments. If this is acceptable to you, please notify Mr. Nielsen."

On August 15, 1973, Greenberg, by letter, clarified a few points and transmitted to Mrs. Stewart a partially executed contract for the sale of the property between Mrs. Stewart and the plaintiff.

"Enclosed find purchase agreement executed in duplicate with an extra copy for your file.

"I had my lawyer look over the changes suggested in your letter of August 6, and he has incorporated these changes into the agreement.

"However, we have taken the liberty of clarifying a few other points which would be actually to your benefit. For instance, we have provided that you get all of the cash rents for 1973, and I get the cash rents thereafter. However, you would have to pay the taxes for 1973 and we would pay the taxes thereafter. This is customary and would seem to be fair. As the closing date is set for January 5, 1974, this is most likely what would happen anyway.

"We have made all of the remaining changes. Mr. Nielsen tells me that things are progressing as far as the estate proceedings are concerned and that this matter will undoubtedly go through.

"You might send me the abstract of title, or let me know where it might be. All I want is your assurance you will pay the cost of continuation of the abstract to date and I will make the arrangements for having it continued.

"Upon receipt from you of a signed copy of this agreement, I will deposit ten percent of the purchase price with the escrow agent. I am assuming you would want the First National Bank in Grand Forks to act as escrow agent."

*"AGREEMENT OF PURCHASE AND SALE*

"THIS AGREEMENT, made and entered into this _____ day of August, 1973, by and between Alice E. Stewart of Lafayette, California, hereinafter called First Party, and Arthur Greenberg, Jr., of Grand Forks, North Dakota, hereinafter called Second Party, WITNESSETH:

"WHEREAS, First Party desires to sell and Second Party desires to purchase the following described premises situated in the County of Grand Forks, State of North Dakota, to-wit:

"The East fifty percent of the acreage located in the West Half (W ½) of Section Eighteen (18) and the Northwest Quarter (NW ¼) of Section Nineteen (19), Township One Hundred Fifty-one (151), Range Fifty (50), Grand Forks County, North Dakota.

"NOW THEREFORE, it is hereby agreed as follows:

"1. The selling price shall be Four Hundred Dollars ($400.00) an acre, it being further agreed that the total acreage in the described premises is 232.135 acres, but that such acreage may be adjusted by a survey by a registered engineer or surveyor to be provided at the expense of the Seller for purposes of determining the actual acreage to be purchased at the above rate per acre.

"2. It is the intention of the Seller to provide good and marketable title to the property subject to any rates, covenants, conditions, restriction and easements of record, and for that purpose the Seller shall furnish an abstract of title to the Buyer brought down to date; the Buyer shall have the right to rescind this proposal if such abstract reveals significant encumbrances.

"3. The cash rent payable for the farming year 1973 shall be retained by the Seller and the cash rent for the farm year 1974 and thereafter shall be kept by the Purchaser.

"4. The taxes for the year 1973 shall be paid by the Seller and the taxes for the years 1974 and thereafter shall be paid by the Purchaser.

"5. The Seller shall use her best efforts to cause all necessary court proceedings for the exchange of properties to be commenced for purposes of establishing title in the name of the Seller. At the option of the Purchaser, if the Seller shall not be able to obtain approval of the court proceedings within ninety days from the date of this agreement, Purchaser may then rescind this agreement.

"6. The selling price shall be paid in cash and upon acceptance of this contract by both parties, the Buyer will deposit ten percent of the estimated purchase price of the property into an escrow account with a mutually agreeable escrow agent. The balance of the purchase price shall be paid in cash upon close of the escrow on January 5, 1974. Seller may, at her option, accelerate the closing date of the escrow in the event she obtains investment property in California and is in need of funds for such purpose. If Seller accelerates the closing, she shall give the Purchaser a minimum of fifteen days notice of such Seller acceleration in order to enable the Purchaser to arrange for the cash payment.

"IN WITNESS WHEREOF, the undersigned have set their hands on the day and year first above written.

"PURCHASER:

"S/ ARTHUR GREENBERG JR.
Arthur Greenberg, Jr.
"SELLER:

"Alice E. Stewart"
[Jurats omitted.]

This contract was never signed or returned by Mrs. Stewart.

On October 11, 1973, Mr. Huff [1] informed Greenberg that, due to the inability of Mr. Greenberg and Mrs. Stewart to come to terms, the property would be sold at public auction. The property was sold to respondents Adams and Bateman at a public auction on November 11, 1973. The plaintiff attended the sale and submitted a written bid for an amount substantially more than what he had previously offered to pay for the property.

Greenberg then brought this action, claiming that a valid, enforceable contract existed between himself and Mrs. Stewart and demanding specific performance of that contract, and asking that all claims of Adams and Bateman to the property be declared null and void.

After commencement of the action, timely answers were interposed by the defendants, interrogatories were served upon and answered by Arthur Greenberg, Jr. and Mrs. Stewart, and depositions of four witnesses were taken, namely, Peter Nielsen, Arthur Greenberg, Jr., H. J. Ruemmele, and John Shaft. No demand for trial by jury was made by any party. Defendant Stewart then made a motion for summary judgment for dismissal of Greenberg's action.

The trial court, pursuant to Rule 56, N.D. R.Civ.P., considered the pleadings, deposi-

1. Mr. Huff was described by Mrs. Stewart as her financial adviser. He is not an attorney at law.

tions, interrogatories, and answers thereto, the admissions on file, the affidavit exhibits and the entire clerk's file in connection with the case to provide a basis for its decision. The trial court issued its memorandum opinion on March 13, 1973, granting the motion for summary judgment and dismissing the plaintiff's case.

On appeal, Greenberg contends the trial court erred in granting summary judgment on the basis that a genuine issue of fact existed. He asks that the summary judgment of dismissal be set aside and the case remanded for trial on the merits to determine whether a contract did exist between the plaintiff and Mrs. Stewart, or in the alternative that this court find that the plaintiff did have a valid contract with Mrs. Stewart. More specifically, he argues that the memorandum opinion, the findings of fact 4 and 5, and conclusions of law 1, 2, 3, 4, 5, 6, 7, and 8 were erroneous.

The plaintiff claims that the existence of a contract in this case is an issue of fact which can only be determined after hearing all of the evidence.

The trial court found that there was no genuine issue as to any material fact and that the defendant was entitled to judgment as a matter of law. Greenberg contends that if a trial were held evidence would be brought out that would show that the parties intended to have a contract for the sale of the land. Greenberg readily admits that in the documents exchanged between the parties certain modifications were included, but contends and argues that a clarification of the modifications would support his contention that a contract existed. Any clarification of an ambiguous modification would not necessarily establish the existence of a contract.

Rule 56(c), N.D.R.Civ.P., states, in part:

". . . Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. . . ."

This rule is clear and direct, requiring no further discussion or explanation as to its application to the instant case.

In *Johnson v. Community Development Corp.*, 222 N.W.2d 847 (N.D.1974), the trial court granted summary judgment in favor of the corporation in an action by a shareholder for a declaration that the actions taken at board of directors' meetings were void for lack of proper notice to the directors. This court on appeal affirmed and stated that the plaintiff's complaint, amended complaint, and supporting affidavit, were general in nature and did not contain evidentiary facts but only stated conclusions and did not, as a matter of law, raise a genuine issue of material fact. This Court observed that the complaint and affidavit did not allege anything more than a difference in judgment between the parties. *See also, Viall v. Triangle Electric, Inc.*, 211 N.W.2d 185 (N.D.1973).

In the instant case, Greenberg failed to establish any evidence which would raise a genuine issue of fact, nor has he disclosed in his brief or oral argument before this Court, what evidence would be presented, or even what additional evidence could be introduced if there were a trial to establish that a contract existed.[2] He argues that the testimony of the parties and other witnesses at a trial would show that a binding contract had been formed, but he does not disclose what the evidence is or will be, or how it can alter what is contained in the letters or in the affidavits, depositions, and answers to interrogatories considered by the trial court. His basic primary argument was and is the contention that the instruments exchanged between the parties constituted a contract. We recognize that this was probably the only approach that could be made even though we do not think the argument was valid. We must also

2. See Rule 56(e), N.D.R.Civ.P.

recognize the provisions of § 9–06–04, NDCC, which sets forth which contracts are invalid unless they are in writing. The matter under consideration in this case comes within the provisions of this section.

■ Thus the only issue remaining before the trial court was, and the only issue before this Court is, whether the documents exchanged do, as a matter of law, form a contract. This is a question amenable to resolution by summary judgment. We therefore affirm the trial court's conclusion that the matter was appropriate for summary judgment under Rule 56, N.D.R.Civ.P.

We now direct ourselves to the primary question of whether or not a valid contract existed between the parties.

Greenberg claims that the four documents exchanged between himself and Mrs. Stewart—the letter to Mrs Stewart of June 22, 1973, signed by Greenberg; the letter addressed to Greenberg signed by Mrs. Stewart dated August 6, 1973; the letter by Greenberg addressed to Mrs. Stewart dated August 15, 1973; and the partially executed agreement of purchase and sale transmitted with the letter of August 15—constitute a binding contract between the parties.

The trial court found that there was no meeting of the minds between the parties with respect to all of the terms and conditions of the sale and that there was no unqualified and absolute acceptance of an offer by either party. The trial court found as a matter of law that the letter of Mrs. Stewart of August 6, and the letter of Greenberg of August 22, did not constitute acceptances, but were counter offers.

■ The rule is fundamental that an acceptance must comply with the terms of the offer. In order to form a contract the offer and acceptance must express assent to the same thing. The acceptance must be unequivocal and unconditional and it may not introduce additional terms and conditions. 17 Am.Jur.2d Contracts § 62, p. 400.

■ A conditional acceptance is itself a counter offer and rejects the original offer.

1 Williston on Contracts § 77, p. 251 (1967); Simpson, Contracts, § 33, p. 48 (1965).

■ The rule has been frequently stated by the North Dakota Supreme Court. In *Beiseker v. Amberson,* 17 N.D. 215, 116 N.W. 94 (1908), the Court stated:

"It is also equally well established that any counter proposition or any deviation from the terms of the offer contained in the acceptance is deemed to be in effect a rejection, and not binding as an acceptance on the person making the offer, and no contract is made by such qualified acceptance alone. In other words the minds of the parties must meet as to all the terms of the offer and of the acceptance before a valid contract is entered into. It is not enough that there is a concurrence of minds of the price of the real estate offered to be sold. If the purchaser adds anything in his acceptance not contained in the offer, then there is no contract."

*See also, Swanson v. Linder,* 75 N.D. 751, 33 N.W.2d 62 (1948); *First State Bank of Ray v. Hardgrove,* 57 N.D. 396, 222 N.W. 265 (1928); *Carns v. Puffett,* 44 N.D. 438, 176 N.W. 93 (1920).

■ Section 9–03–21, NDCC, is pertinent to the question under consideration, which provides as follows:

"Except as provided by section 41–02–14, an acceptance must be absolute and unqualified, or must include in itself an acceptance of that character which the proposer can separate from the rest and which will conclude the person accepting. A qualified acceptance is a new proposal."

The reference to § 41–02–14, dealing with sales under the Uniform Commercial Code, has no significance in this case, because the UCC generally does not apply to real estate transactions.

Greenberg contends that any modifications made by the parties were insignificant and did not affect the motive of the trans-

action. He claimed that the proposed changes involved only mechanics relating to the closing of the sale and that there was a meeting of the minds on all necessary issues. He argues that not every modification of terms qualifies an acceptance and that there is a factual question of the degree of modification which must be resolved for each contract individually. Greenberg claims that the facts in this case show that the modifications are not of such significance as to qualify the acceptance of the offer and make it a counter offer.

*Beiseker v. Amberson, supra,* was an action for damages claimed under an alleged breach of a contract to sell and convey real estate. The alleged contract was evidenced solely by letters between the parties. The plaintiff, in purporting to accept the defendant's offer, added a new term asking the defendant to send the deed to the land to one of two banks named in the letter. The court held that this qualified the acceptance and that there was no binding contract. The court stated that if the plaintiff had accepted the offer unconditionally, his right to a deed could have been made effectual only by a tender of the price to the defendant personally; and, by requiring the defendant to send the deed elsewhere, a new condition was attached to the acceptance which the defendant was under no legal obligation to accept. The appellant contended that there was an unqualified acceptance contained in the letter and what followed was merely a suggestion for the most convenient way of completing the transaction. The court refused to accept this, holding that the place where the deed was to be sent was significant.

In *Carns v. Puffett, supra,* the alleged contract was based upon exchange of letters between the parties. The defendant wrote a return letter stating that she would sell the property for the offered price if the plaintiff would pay the taxes due on the property and send his note and mortgage to a New York bank. The plaintiff replied by stating that he would deliver his note and mortgage to a bank in North Dakota upon receipt of the deed and that he would pay the taxes due if the plaintiff would credit him for the cost of insuring the property. The court held that these modifications constituted terms of the proposed contract and were not matters merely relating to the execution and performance of it; that they therefore constituted counter offers, and that there was no contract between the parties.

In *Swanson v. Linder, supra,* the plaintiff, in responding to the defendant's offer, asked that the deed be sent to a different bank than that proposed by the defendant and that the money change hands there. The court held that this constituted a counter offer and that there was no contract.

The overriding issue in the instant case is whether the modifications made by Mrs. Stewart and Greenberg constitute counter offers or acceptances.

Greenberg offered to purchase the property in question in a document dated June 22, 1973, which set out his terms and conditions. One of the conditions was that the offer be accepted on or before July 10, 1973. This was not done.

Mrs. Stewart replied on August 6, asking that certain modifications be made, among them that the cash rents from the land be divided pro rata rather than equally, and that the sale be a cash sale only. It contained the proviso that if it was acceptable to him he should notify Mr. Nielsen. This he did not do, but instead made some further modifications.

Greenberg responded to this letter on August 15, changing the provisions as to the payment of taxes and the allocation of cash rent to be received, and accepting the rest. Greenberg proposed that Mrs. Stewart keep all of the rents for 1973 and pay all of the 1973 taxes. Mrs. Stewart did not sign this proposal.

The trial court held, and we agree, that Mrs. Stewart's response of August 6 constituted a counter proposal and that Greenberg's agreement of purchase and sale of

August 15 was not an acceptance of Mrs. Stewart's counter proposal because it varied the terms of the counter proposal. It was a new proposal or counter offer.

Counter offers or proposals continued between the parties, which shows that they had not reached a meeting of the minds but were still negotiating. The absence of Mrs. Stewart's signature on the proposed agreement is in complete harmony with her position that no contract existed. Both parties understood that any agreement reached through their correspondence would be set forth in written instruments, which further contemplates execution of such agreement.

We find that there is substantial evidence to support the findings of fact of the trial court and that they are not clearly erroneous. We also find that the conclusions of law made by the trial court are in accordance with the law.

The summary judgment of the trial court dismissing the action is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.