Erwin GROSSMAN, Plaintiff and Appellant,

v.

McLEISH RANCH, a North Dakota partnership, Defendant and Appellee.

Civ. No. 9712.

Supreme Court of North Dakota.

April 21, 1980.

Rausch & Rausch, Bismarck, for plaintiff and appellant; argued by James P. Rausch, Bismarck.

Kelsch & Kelsch, Mandan, for defendant and appellee; argued by William C. Kelsch, Mandan.

PEDERSON, Justice.

This is an action brought by Erwin Grossman, as purchaser, for specific performance of an alleged contract to sell a large parcel of land owned by McLeish Ranch. The District Court of Emmons County, sitting without a jury, denied relief and Mr. Grossman appeals from this decision. We affirm.

McLeish Ranch is a farming operation owned by members of the Thurman McLeish family. On November 29, 1977, Thurman McLeish, as president of McLeish Ranch, listed a large parcel of land for sale with Reinhold J. Schauer (Schauer), a licensed real estate broker in Bismarck. The listing agreement Thurman McLeish signed was a standard form with blanks for pertinent information, such as land description and price, and had been used by Schauer throughout his 14 years in real estate. This form provided in relevant part:

"In consideration of your agreement to list, and to offer for sale the properly hereinafter described and to use your efforts to find a purchaser, I (We) hereby give you the sole and exclusive right to sell until April 30, 1978 . . . [description of land] for the sum of Three hundred, thirty six thousand ($336,000.00) dollars and upon the following terms cash upon delivery of deed. Sale includes ½ of the mineral rights, oil, gas." [underlined portions are handwritten]

Schauer advertised the property in several newspapers and, in response to these ads, Erwin Grossman contacted Schauer and expressed an interest in purchasing the land. On April 1, 1978, Grossman, as purchaser, signed a document entitled "contract for sale," reciting a purchase price of $312,000.00 and a down payment of $3,000.00, including coal and gravel along with the other minerals, and containing a further condition that "this offer is subject to purchaser obtaining loan at Federal Land Bank . . . ." This document was signed by Schauer in the space designated "Witness" and the space designated for seller's signature was left blank. Schauer told Grossman at this time he would have to show this "offer" to Thurman McLeish to see if he wished to accept it.

On April 3, 1978, Grossman requested to see, and received a copy of, the listing agreement between McLeish Ranch and Schauer.

On April 4, 1978, Grossman informed Schauer that he would pay the full $336,000 called for in the listing agreement. A second document, entitled "contract for sale," was signed by Grossman, which provided that the offer was subject to financing and that coal and gravel were included minerals, and stated that "this is a revision of offer made April 1, 1978." Again Schauer signed in the space designated "Witness" and left the space for seller's signature blank.

Grossman was subsequently informed by Schauer that McLeish Ranch would not sell the land. As the parties were unable to arrive at a resolution of this matter, the earnest money deposit paid to Schauer by Grossman was returned to him.

Grossman then brought suit seeking specific performance of the April 4th "contract for sale." Grossman contends that Schauer was acting as McLeish Ranch's agent when he signed the document, and that he had authority to bind McLeish Ranch, as provided in the listing agreement. The district court found that Schauer signed the alleged contract as a witness only and did not purport to sign it on behalf of McLeish Ranch, expressly stating that he had no authority to do so. Based on these facts, the court made the following conclusions of law:

"VI.

"That even if the listing agreement was construed to have given Schauer the power to execute a binding contract for sale on McLeish's behalf, Schauer did not

attempt to exercise such an authority and Grossman knew or should have known that Schauer signed the contract for sale herein sought to be enforced only as a witness to Grossman's signature.

"VII.

"Further, that even if Schauer had the authority to execute a binding contract of sale on McLeish's behalf and had in fact purported to bind McLeish thereto, said action would not be enforceable because the terms of the contract for sale vary substantially from the terms of the listing contract and would therefore be beyond Schauer's authority.

"VIII.

"Because the contract for sale sought to be enforced herein and which is signed only by Grossman, contained a new term, that is, that it was subject to Grossman's securing financing and included coal and gravel as well as oil and gas, it was in effect a counteroffer by Grossman which was not accepted by McLeish. As a counteroffer, it was not an acceptance of McLeish's terms as stated in its listing agreement with Schauer.

"IX.

"In this case, there is no contract, written or otherwise, for this court to specifically enforce."

On appeal, Grossman contends that the district court's finding of fact that Schauer signed the "contract for sale" as a witness only, and did not purport to sign it on behalf of McLeish Ranch, was clearly erroneous. He further argues that the district court was wrong in concluding that there was no contract as a matter of law.

■ In our review of the district court's denial of specific performance, we will not set aside the findings of fact unless they are clearly erroneous. Rule 52(a), NDRCivP. Specific performance is an equitable remedy and "is neither a matter of grace nor of absolute right." *Zimmerman v. Campbell*, 245 N.W.2d 469, 471 (N.D. 1976).

■ We first address Grossman's contention that the district court's finding of fact that Schauer signed the "contract for sale" as a witness only was clearly erroneous. Intermingled with this argument is Grossman's assertion that the listing agreement Thurman McLeish signed gave Schauer the authority to sell the land in question.

Schauer testified that he never thought that the listing agreement gave him the authority to sell the McLeish Ranch land, rather that he considered his authority to be to find a ready, willing, and able buyer. He had been using this form of listing agreement for 14 years and had never interpreted it as granting authority to sell someone else's land. Clearly, he had no intent to sell this land without Thurman McLeish's approval, and he communicated this lack of intent to Grossman. Schauer testified that he told Grossman that he had to get Thurman McLeish's approval of, and signature on, the April 4th "contract for sale" before it became binding.

We have said that "a listing agreement or an authorization to sell agreement is basically an employment contract or a creation of an agency relationship. . . . [D]ifferent principles of law may apply to the contract depending on the contents and nature of the contract." *Kruger v. Soreide*, 246 N.W.2d 764, 770 (N.D.1976).

We need not decide whether the listing agreement in the instant case could be construed to give authority to Schauer to sell the land. See *Queen City Lumber Company v. Fisher*, 111 N.W.2d 714 (N.D.1961). Schauer clearly did not intend to exercise such authority and told Grossman he could not. The district court's finding of fact that Schauer signed the document as a witness only and did not purport to sign it on behalf of McLeish Ranch is fully supported by the record.

■ Grossman next contends that even if Schauer did not have the authority to bind McLeish Ranch to the "contract for sale," a valid contract existed between the parties.

Grossman alleges that the listing agreement Thurman McLeish signed constituted McLeish Ranch's offer to sell, that Grossman accepted this offer by signing the April 4th "contract for sale," and that the two documents taken together create a contract.

The district court held that because the alleged contract contained new terms that varied from the listing agreement, it was in effect a counter offer by Grossman that was not accepted by McLeish Ranch.

This court recently stated the rule as to acceptance of contracts:

"The rule is fundamental that an acceptance must comply with the terms of the offer. In order to form a contract the offer and acceptance must express assent to the same thing. The acceptance must be unequivocal and unconditional and it may not introduce additional terms and conditions. 17 Am.Jur.2d Contracts § 62, p. 400.

"A conditional acceptance is itself a counter offer and rejects the original offer. 1 Williston on Contracts § 77, p. 251 (1967); Simpson, Contracts, § 33, p. 48 (1965)." *Greenberg v. Stewart*, 236 N.W.2d 862, 868 (N.D.1975).

In the instant case, the "contract for sale" contained additional terms which varied from the offer—i. e., (1) the sale was subject to financing, (2) coal and gravel were to be included with oil and gas as minerals passing with the sale, and (3) "if financing conditions look favorable, reasonable additional time is granted for closing." Grossman contends that these additional terms do not constitute material alterations and should not be construed to change the acceptance into a counter offer.

A similar argument was rejected by this court in *Greenberg v. Stewart, supra*. The buyer in that case contended that any modifications made by the parties were insignificant and did not affect the motive of the transaction. This court held that where the response to an offer to purchase modifies the terms of the offer, the response is a conditional acceptance or counter offer. This counter offer rejects the original offer so that no valid contract was made.

It is not necessary to determine whether or not the words used in the listing agreement would have excluded or included coal and gravel. See *Reiss v. Rummel*, 232 N.W.2d 40 (N.D.1975); *Olson v. Dillerud*, 226 N.W.2d 363 (N.D.1975); *Christman v. Emineth*, 212 N.W.2d 543, 70 A.L.R.3d 366 (N.D.1973); *Abbey v. State*, 202 N.W.2d 844 (N.D.1972).

The "contract for sale" Grossman signed contained additional terms that varied from the offer. His acceptance was not unconditional; therefore it is considered a rejection of the original offer and becomes a counter offer. Because there was no mutual assent between the seller, McLeish Ranch, and the buyer, Grossman, there was no contract.

We find that the conclusions of law made by the district court are in accordance with the law. The judgment is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.