**Donald J. COOKE and Judy R. Cooke, Plaintiffs and Appellants,**

v.

**BLOOD SYSTEMS, INC. d.b.a. United Blood Services, Defendant and Appellee.**

Civ. No. 10113.

Supreme Court of North Dakota.

May 27, 1982.

Stefanson, Landberg & Alm, Moorhead, Minn., for plaintiffs and appellants, argued by Dan D. Plambeck, Fargo.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendant and appellee; argued by Thomas A. Mayer, Bismarck.

SAND, Justice.

Donald J. Cooke and Judy R. Cooke [hereinafter referred to as Cooke] appealed from a district court judgment dismissing with prejudice their complaint against Blood Systems, Inc., d. b. a. United Blood Services.

In 1976 Cooke purchased real property and, on 1 Sept. 1976, leased it to Dorene Nelson and Bertel Nelson [Nelsons]. The primary term of the lease between Nelsons and Cooke expired 31 Aug. 1979; however, it contained a three-year renewal option. In January 1979 Nelsons contacted Cooke regarding renewal of the lease and had a brief discussion without any definite results. In April 1979 John Anthonisen, executive director of Blood Systems' operations in North Dakota and parts of Minnesota and South Dakota, contacted Nelsons regarding the availability of the property and was advised to contact Cooke, the owner of the property.

On 1 May 1979 Anthonisen and Kenneth K. Kelley, president and chief executive of Blood Systems, met with Cooke in his office to discuss leasing of the property. Cooke computed a rental figure of $1,383.00 per month based on a 12% (plus taxes and insurance) return on the estimated market value of the property, $125,000.00. Cooke also advised Blood Systems at the meeting that the Nelsons had the first right to rent the property. At the conclusion of the meeting, Kelley told Cooke that Blood Systems would send Cooke a blank copy of their standard lease form for completion and incorporation of the terms discussed, and after he had completed and signed the lease he was to send it to Blood Systems.

On 10 May 1979 Blood Systems sent its standard lease form to Cooke. The form was not signed by Blood Systems' officers, and Anthonisen testified that he had not filled in any blanks in the form. Cooke informed the Nelsons of the rental figure discussed at the 1 May meeting, and Cooke, on 8 May 1979, suggested to Blood Systems that it share the property with Nelsons, but this suggestion was later mutually abandoned by Nelsons and Blood Systems.

After a meeting between Cooke and Anthonisen on 14 May 1979, Anthonisen wrote a memo to Bill Burt, director of property management for Blood Systems, suggesting that he (Burt) handle the negotiations. Attached to the memo was a copy of some notes furnished by Cooke to Anthonisen concerning lease terms that had been discussed. Pursuant to the notes, the tenant was to pay all repairs and utilities for a three-year lease and there would be no increase in rent during that time. The notes also provided the monthly rent was to be $1,383.00. On 7 June 1979, Anthonisen wrote to Burt advising him that Nelsons were moving and the property would be available 1 August 1979 at the latest. An-

thonisen's letter to Burt gave his reasons why the property would be suitable for Blood Systems and that the rental agreement should be completed. The letter also stated that Anthonisen had given no commitment on terms and that those matters would be left to Burt. Anthonisen contacted, solicited, and received oral and written bids and estimates from contractors and office suppliers for remodeling and furnishing the premises. These contacts and solicitations continued through July of 1979.

On 11 July 1979, Cooke wrote to Anthonisen and enclosed duplicate originals of a proposed lease signed by the Cookes and asked Anthonisen to forward the duplicate originals to his home office. This lease was not the standard form sent by Blood Systems to Cooke. The lease Cooke sent to Anthonisen and Blood Systems was modeled after Blood Systems' standard lease form; however, certain modifications and alterations were made and some blanks were not completed. The rental figure set forth in this lease was $1,312.50 a month. Cooke also advised Anthonisen that it appeared that Nelsons would vacate the building on 1 August 1979.

During the latter part of July, Anthonisen finally obtained the last written estimates for remodeling and furnishing the premises for possible use by Blood Systems and forwarded the lease received from Cooke and the estimates to Burt by letter dated 1 August 1979. Burt testified that on 8 August he received a call from Cooke inquiring about the lease. Specifically, Cooke inquired when Blood Systems would occupy the building. Burt advised Cooke that he had just received the lease, together with the estimates, which he was in the process of reviewing, and that any decision concerning the lease would be made by the operations department. Burt testified that he advised Cooke that the decision to lease was one which he was not authorized to make, and that someone would contact him by 15 August with a decision. On the 9th or 10th of August Terry Ingebrigtson after a management decision, called Mr. Cooke and advised him that Blood Systems had decided not to lease the premises.

Cooke brought an action against Blood Systems for rent allegedly owed pursuant to an oral lease agreement and for future rents. Blood Systems' answer admitted there were discussions and negotiations between the parties concerning the possibility of leasing the premises and asserted that because there was no executed written lease between the parties, Cooke's claim was barred by the statute of frauds.

After a bench trial, the court issued its memorandum opinion which also served as its findings of fact, conclusions of law and order for judgment, as permitted by Rule 52(a), North Dakota Rules of Civil Procedure. A judgment dismissing the complaint with prejudice was entered, from which Cooke appealed.

The first issue for our consideration is whether or not a contract or an agreement was formed between the parties.

■ An agreement or contract for the leasing of property for longer than a one-year period is invalid unless there is a written note or memorandum evidencing the agreement. North Dakota Century Code § 9–06–04(4). In this instance it is undisputed that Cooke and Blood Systems did not enter into a written contract or agreement to lease the property. However, part performance of an oral contract, promissory estoppel, or equitable estoppel may bar the assertion of the statute of frauds if, in fact, there is an oral agreement.

The district court concluded that no contract or agreement was formed between the parties because Cooke's statements of the proposed rent and other terms in the written lease drawn up by him were only an offer to rent the premises on those terms and Blood Systems at no time unequivocally and unconditionally accepted the offer to lease the premises.

Cooke contended that Blood Systems communicated its consent to him to lease his property and that the communication of consent was evidenced by the totality of the circumstances and Blood Systems' conduct. Implicit in Cooke's argument is that an

acceptance actually occurred because Blood Systems made no counteroffer to the terms proposed by Cooke, and Blood Systems was enthusiastic in pursuing the possibility of renting the premises and at no time stated they would not occupy the premises. We disagree.

■ A contract requires an offer, an acceptance of an offer, and a mutual acceptance and understanding between the offeror and the offeree as to the terms of the obligation. *Cargill, Inc. v. Kavanaugh*, 228 N.W.2d 133 (N.D.1975). A contract exists if there is a mutual assent as to the terms of an offer and an acceptance. *Bottineau Public School District # 1 v. Currie*, 259 N.W.2d 650 (N.D.1977). An offer to be considered accepted must be accepted unconditionally. *Greenberg v. Stewart*, 236 N.W.2d 862 (N.D.1975). A conditional acceptance of an offer is in itself a counteroffer which rejects the original offer. *Id.* The acceptance of an offer must be unequivocal and unconditional, and it may not introduce additional terms and conditions. *Id; Swanson v. Linder*, 75 N.D. 751, 33 N.W.2d 62 (1948).

■ We do not believe the factual situation presented in this case established that Blood Systems and Cooke reached an oral agreement to lease the premises. At the 1 May 1979 meeting, Cooke advised Blood Systems of Nelsons' option to renew their lease and told Blood Systems that Nelsons would have an option to meet any rental figure Blood Systems would pay. At the same meeting, Cooke and Blood Systems discussed the possibility of Nelsons and Blood Systems both occupying the premises. Cooke testified that approximately half of the discussion at the 1 May 1979 meeting centered on when Blood Systems could occupy the building. Rental terms, including a dollar amount and other terms, were also discussed. Cooke testified that Kelley told him a copy of their standard lease form would be mailed to him with instructions for the Cookes to sign it and have it notarized. Significantly, Cooke also testified that at that meeting Blood Systems' representative did not use any language to the effect of "We'll lease it from you."

We do not believe the 1 May 1979 meeting between Cooke, Anthonisen, and Kelley established that a contract was entered into between Cooke and Blood Systems. At that time there was still a question whether or not Nelsons would continue to rent the building, and, in fact, the proposed sharing of the building between Nelsons and Blood Systems itself indicates that no firm agreement was made between Cooke and Blood Systems at the 1 May meeting.

■ After the 1 May meeting, Blood Systems sent a blank copy of their standard lease form to Cooke. It contained blank spaces pertaining to the execution date, the parties to the lease, the description of the property, the length of the lease, the rental, the length of the renewal option, and the amount of liability insurance. The lease was not signed by a representative of Blood Systems.

The lease sent by Cooke to Blood Systems identified the premises, set a rental figure of $1,312.50 per month for three years, and required liability insurance in the amount of $300,000.00. The lease was signed by the Cookes. Several of the provisions in the lease were identical to the provisions in Blood Systems' standard lease form. However, the leases differed as to payment of utilities, repairs and maintenance, the length of time for notice to exercise the renewal option, and the lease prepared by Cooke contained a clause requiring Blood Systems to indemnify Cooke for any actions arising from personal injuries or property damage on the leased premises. The cover letter accompanying the lease sent by Cooke to Blood Systems reflects that Cooke was enclosing a "proposed lease." These factors all indicate the lease prepared by Cooke was an offer. Blood Systems did not sign the lease and did not formally accept Cooke's offer of the "proposed lease."

■ Nor do we believe that Blood Systems' conduct evidenced an implied promise on its part to lease the premises if Nelsons did not renew their lease. The record reflects that Anthonisen apparently was anx-

ious and enthusiastic about leasing the premises; however, Cooke testified that he was aware that Anthonisen did not have the authority to bind Blood Systems. Neither do we believe there was a duty or obligation on the part of Blood Systems to make a counter-offer or object to the proposal by Cooke. The record reflects that Cooke was an attorney experienced in real estate transactions. Cooke could have protected his interests by requiring Blood Systems to sign an agreement to rent the premises on specified terms if Nelsons did not renew their lease. These circumstances, coupled with the fact that the record does not reflect that there was a definite agreement to rent the premises leads us to conclude that Blood Systems' conduct cannot be deemed a binding acceptance.

■ The next issue raised by Cooke is that the doctrine of promissory estoppel constitutes a separate cause of action through which relief may be granted to him, and that the facts of this case establish that he was entitled to recovery under that doctrine. Cooke urged this Court to recognize as a separate cause of action the doctrine of promissory estoppel as set forth in Restatement (Second) of Contracts § 90 (1981). That section provides, in part, as follows:

> "(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires."

See also, *Hoffman v. Red Owl Stores, Inc.,* 26 Wis.2d 683, 133 N.W.2d 267 (1965); *Constructors Supply Co. v. Bostrom Sheet Metal Works, Inc.,* 291 Minn. 113, 190 N.W.2d 71 (1971).

Without determining whether or not promissory estoppel constitutes an independent cause of action,[1] we believe the doctrine of promissory estoppel is inapplicable because it requires there be a promise or

agreement and, as we have previously stated, the facts and circumstances of this case do not reflect that there was a promise or agreement between Cooke and Blood Systems.

The next issue raised by Cooke is that the doctrine of part performance bars Blood Systems' assertion of the statute of frauds.

■ Part performance of an oral contract may render the statute of frauds inapplicable as a defense. *Vasichek v. Thorsen,* 271 N.W.2d 555 (N.D.1978); *Kadrmas v. Kadrmas,* 264 N.W.2d 892 (N.D.1978); *Buettner v. Nostdahl,* 204 N.W.2d 187 (N.D. 1973). In *Buettner v. Nostdahl, supra,* this court stated that the doctrine of part performance required proof of the existence, terms and character of the contract by evidence which was clear and unequivocal and that performance necessary to take the oral contract out of the statute of frauds must be consistent only with the existence of the contract.

■ Cooke asserted the conduct of Blood Systems unmistakably pointed to the existence of the contract and that Cooke fully performed his part of the bargain by making the property available for Blood Systems and by completing, signing, and mailing the written lease to Blood Systems.

Cooke's argument in this respect is not persuasive because the record does not reflect evidence to support his assertion that there was, in fact, an oral contract or agreement.

The next issue raised by Cooke is that the doctrine of promissory estoppel and equitable estoppel bar Blood Systems' assertion of the statute of frauds.

The doctrine of equitable estoppel appears in North Dakota Century Code § 31–11–06, which provides:

> "When a party, by his own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in

---

1. See *O'Connell v. Entertainment Enterprises,* *Inc.,* 317 N.W.2d 385 (N.D.1982).

any litigation arising out of such declaration, act, or omission."

We have stated the requirements of equitable estoppel in *Farmers Cooperative Ass'n of Churchs Ferry v. Cole*, 239 N.W.2d 808, 813 (N.D.1976):

"Based as it is upon a consideration of the facts in light of equitable considerations, public policy, fair dealing, and the like, the basic elements of an equitable estoppel, insofar as it relates to the person being estopped, are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or will influence, the other party or persons; and (3) knowledge, actual or constructive, of the real facts. Insofar as related to the party claiming the estoppel, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon, of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice."

See also, *O'Connell v. Entertainment Enterprises, Inc.*, 317 N.W.2d 385 (N.D.1982).

We do not believe the doctrine of equitable estoppel applies to the facts of this case because the representatives of Blood Systems were not authorized to bind Blood Systems and Cooke was aware of the lack of authorization on the part of Blood Systems' representatives.

■ The elements necessary to establish recovery under the doctrine of promissory estoppel are as follows:

"(1) a promise which the promissor should reasonably expect will cause the promissee to change his position; (2) a substantial change of the promisee's position through action, or forbearance; (3) justifiable reliance on the promise; and (4) injustice which can only be avoided by enforcing the promise." *O'Connell v. Entertainment Enterprises, supra* at 390.

■ We have already noted that the facts and circumstances of this case do not establish an agreement or promise between Blood Systems and Cooke. Therefore, one of the essential elements of promissory estoppel, a promise, has not been established and that doctrine is not applicable.

For reasons stated in this opinion, the judgment of the district court is affirmed and costs are to be assessed against Cooke and in favor of Blood Systems.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.