Phyllis SCHREDER, individually as widow of the deceased Paul Schreder and on behalf of Dawn Marie Schreder, the surviving minor daughter of the decedent, Paul Schreder, and as Trustee for the Workmen's Compensation Bureau, Plaintiff and Appellant,

v.

CITIES SERVICE COMPANY, Defendant,

and

Bomac Drilling, TRG Drilling Corp., a/k/a TRG Drilling Corporation (Bomac Drilling Division); and Alfred Hastings, individually and as agent, employee, and servant of TRG Drilling Corp.; Defendants and Appellees.

Civ. No. 10360.

Supreme Court of North Dakota.

July 21, 1983.

Claudette M. Abel, of Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiff and appellant.

W. Todd Haggart, of Nilles, Hansen, Selbo, Magill & Davies, Fargo, for defendants and appellees.

VANDE WALLE, Justice.

Phyllis Schreder appealed from a summary judgment dismissing her complaint against Bomac Drilling, TRG Drilling Corporation, and Alfred Hastings ("the defendants")[1] to recover damages for the wrongful death of her husband, Paul. We affirm.

---

1. The summary judgment dismissing the complaint did not apply to the defendant Cities Service Company. The trial court, in its order for judgment, determined that there was no reason for delay in entering the judgment. See Rule 54(b), N.D.R.Civ.P. Schreder's complaint against Cities Service therefore is not a part of this appeal.

## I

At the time of his death, Paul Schreder was an employee of TRG Drilling Corporation and was working as a "driller" on an oil rig located in Billings County, North Dakota. One of Schreder's primary duties as a driller was to operate the controls which regulated the upward and downward movements of the traveling blocks suspended by cable from the top of the derrick. The function of the traveling blocks is to either lower the drilling pipe into or raise the drilling pipe from the hole being drilled.

Paul was killed while lowering drilling pipe into the hole when the traveling blocks landed on the floor, tipped over, and crushed him.

Phyllis alleged in her complaint that the traveling blocks hit the floor of the drilling platform because the hydromatic brake was not working properly. A hydromatic brake can be engaged or disengaged. It is generally engaged when the weight of the drilling pipe suspended from the traveling blocks exceeds the weight the brake on the draw works can stop. Phyllis further alleged that either the hydromatic brake failed to engage or that once engaged it disengaged and as a consequence Paul could not stop the blocks from falling to the floor.

The gravamen of Phyllis's complaint was that the defendants either knew or should have known the hydromatic brake was not functioning properly, as evidenced by the fact that Hastings, who supervised the drilling operations of the oil rig Schreder worked on, instructed the drillers to use a wooden hammer handle as a wedge to attempt to keep the brake engaged. Phyllis concluded that requiring Paul to operate the drilling rig when the hydromatic brake was inoperative was such gross negligence as to constitute an actual intent to injure him.

The defendants responded to Phyllis's complaint by filing a motion for summary judgment on the ground that Phyllis's action was barred as a matter of law by the North Dakota Workmen's Compensation Act, Title 65, N.D.C.C.

Under the Act, if an employer contributes premiums to the Workmen's Compensation Fund to secure the payment of compensation to his employees, a workman injured in the course of his employment has no right of action against the contributing employer or any agent, servant, or other employee of such employer for damages for personal injuries. Sec. 65–01–08, N.D.C.C. See also *Schlenk v. Aerial Contractors, Inc.,* 268 N.W.2d 466 (N.D.1978).

It is undisputed that at the time Paul was killed (1) he was acting in the course and scope of his employment, (2) TRG Drilling Corporation, Paul's employer, was contributing premiums to the Workmen's Compensation Fund, and (3) Alfred Hastings was an employee of TRG Drilling Corporation. Furthermore, as of July 19, 1982, Phyllis received compensation benefits from the North Dakota Workmen's Compensation Bureau in the amount of $18,486.42.

The application of Section 65–01–08 to the undisputed facts apparently leads to the inescapable conclusion that the defendants are immune from an action seeking damages for the wrongful death of Paul Schreder. See also Section 65–04–28, N.D.C.C.

Phyllis argues, however, that the Workmen's Compensation Act is not intended to apply in cases where an employee is injured by the intentional tort of an employer or co-employee, and, alternatively, that if the plain language of the Act prohibits all suits brought against employers covered by the Act, then public policy should require the finding of an exception to the Act when the employer actually intends to injure the employee or when the employer's negligence is so gross as to be equivalent to an actual intent to injure.

This court in *Schlenk, supra,* held (1) the Workmen's Compensation Act does not allow an exception to the immunity granted to contributing employers (and their employees, servants, etc.) against suit by an injured employee even when the employee's injuries are intentionally inflicted, and (2) under the particular facts of the case, public policy did not require recognition of an exception.

Phyllis maintains that the issue of whether or not the Workmen's Compensation Act prohibits an employee from suing his employer or co-employee for damages for intentionally caused injuries is not foreclosed by our decision in *Schlenk* because: (1) the Act has been amended since the *Schlenk* case was decided; and, should we decide the Act as amended still does not permit an employee to sue his employer for intentional torts, (2) the individual facts of this case require recognition of a public-policy exception.

We do not today decide if the Workmen's Compensation Act itself or a public-policy exception to the prohibitions of the Act permits an action by an employee against his employer or co-employee for intentional injury. We do not believe it is necessary to construe the Workmen's Compensation Act as amended or decide whether a public-policy exception exists because it is clear from the undisputed facts of this case that Paul Schreder's death was the result of an accident and not an actual intent to injure him.

Phyllis relies upon the decision in *Blankenship v. Cincinnati Milacron Chemicals,* 69 Ohio St.2d 608, 433 N.E.2d 572 (1982), in support of her position that the Workmen's Compensation Act does not preclude any employee from enforcing his common-law remedies against his employer for an intentional tort. In *Blankenship,* a majority of the Ohio Supreme Court concluded that the Ohio Constitution and statutes do not bestow upon employers immunity from civil liability for their intentional torts and an employee may therefore resort to a civil suit for damages. We believe, for the purposes of our Act, that there is a distinction between an intentional injury and an inten-

tional tort, i.e., not all intentional *torts* are intentional *injuries.* The difference is well set forth in *Hulne v. International Harvester Co.,* 496 F.Supp. 849, 852–853 (D.N.D. 1980), wherein Chief Judge Paul Benson, in analyzing our decision in *Schlenk,* wrote:

"In the instant case, plaintiff does not seriously allege that defendant Larson manifested an actual intent to kill or injure the decedent. Rather he claims that Larson ordered the truck frame modified, knowingly creating a danger for the decedent, and that these actions were so gross as to be equivalent to an actual intent to injure. These allegations, short of a claim of intentional wrongdoing, are similar to the allegations in *Schlenk, supra.* ...

"... Even under the most liberal reading of plaintiff's complaint, it falls short of alleging 'an actual intent to injure' which would be necessary to have the injury fall within an exception for intentional or willful injuries."

■ *Blankenship* apparently permits a civil action by an employee for an intentional *tort* which results in injury to the employee because there was an intent to commit the tort although there may have been no intent to injure the employee. Even though we leave open the issue of whether or not an employee may institute a civil action for an intentional injury, we cannot agree with that portion of the *Blankenship* decision which holds that an employee covered by Workmen's Compensation may institute a civil action for an intentional tort, whether or not there was an actual intent to injure the employee.[2]

---

**2.** A concurring opinion in *Blankenship* by Chief Justice Celebrezze indicates that prohibiting an employee from suing his or her employer for intentional tortious injury would allow a corporation to "cost-out" an investment decision to injure or kill workers. If, indeed, that is the result of the Workmen's Compensation Act, it may be a powerful incentive for the Legislature to amend our current law. An attempt was made in the 1983 Legislative Assembly to amend Section 65–01–08, N.D.C.C., by adding the following provision: "However, if the injury or death was caused by the gross negligence

or willful or wanton misconduct of the employer, the right of action against the employer is not abolished." See House Bill 1302, Forty-eighth Legislative Assembly. The bill failed to pass in the House. This court has previously indicated that action by a subsequent Legislature in attempting to amend a statute cannot be taken as proof of what a previous Legislature intended when it enacted the original statute and that the intent of the Legislature in the enactment of a law is to be ascertained primarily from the language of the law. See, e.g., *St.*

Thus in *Schlenk* we quoted from Larson, *The Law of Workmen's Compensation,* Vol. 2A, § 68.13 (1976), on the subject of a common-law action by an employee against his employer for damages for intentionally caused injuries as follows:

"§ 68.13 *Necessity for actual intent to injure*

"Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury.

"Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character."

We continue to agree with Larson that an actual intent to injure is necessary to move an injury out of the category of accidental injury and into the category of genuine intentional injury.

■ Assuming for purposes of this opinion that Phyllis's allegations are true that the hydromatic brake was inoperative and that the defendants in fact knew or should have known it was inoperative [see, e.g., *Johnson v. Haugland,* 303 N.W.2d 533 (N.D. 1981) ], we believe such conduct is not sufficient to transform Paul's death from an accident to the result of an actual intent to injure. Accordingly, we affirm the trial court's granting of the motion for summary judgment on the basis that Phyllis's pleadings raised no genuine issue of material

fact, even assuming for purposes of the motion that an employee may sue an employer for intentionally caused injuries, because under the facts as alleged, it is beyond question that Paul's death was not the result of an actual intent to injure as distinguished by Larson [*The Law of Workmen's Compensation*], *supra,* from injuries of an accidental character. See *Hulne v. International Harvester Co., supra.*

## II

■ In its order for summary judgment, the trial court also dismissed Phyllis's separate claim for loss of consortium. Phyllis in her brief says that she could find no rationale for the trial court's decision to dismiss this part of her claim and asks us to reverse the trial court's decision in this regard.

Whether or not Phyllis can maintain a separate claim against the defendants in her individual capacity for loss of consortium is decisively settled by Section 65–05–06, N.D.C.C., when applied to the facts of this case. Section 65–05–06 provides:

"The payment of compensation or other benefits by the bureau to an injured employee, or to his dependents in case death has ensued, shall be in lieu of any and all rights of action whatsoever against the employer of the injured or deceased employee."

Because Phyllis received compensation benefits from the Workmen's Compensation Bureau, she is precluded from suing the defendants for loss of consortium [*Gernand v. Ost Services, Inc.,* 298 N.W.2d 500 (N.D. 1980); *Schlenk, supra,* 268 N.W.2d at 472; *Hulne, supra,* 496 F.Supp. at 853; *Lovelette v. Braun,* 293 F.Supp. 41 (D.N.D.1968) ], and the trial judge therefore did not err in dismissing her claim for loss of consortium in the order for summary judgment.

For the reasons stated, the judgment of the trial court is affirmed.

ERICKSTAD, C.J., and PEDERSEN, SAND and PAULSEN, JJ., concur.

*Alexius Hospital v. Eckert,* 284 N.W.2d 441 (N.D.1979); *St. Vincent's Nursing Home v. De-*

*partment of Labor,* 169 N.W.2d 456 (N.D.1969).