Roger J. THOMPSON, Plaintiff and Appellant,

v.

NORTH DAKOTA WORKERS' COMPENSATION BUREAU, Defendant and Appellee,

and

Metric Construction, Defendant.

Civ. No. 910354.

Supreme Court of North Dakota.

Aug. 19, 1992.

Keith Wolberg (argued), Bismarck, for plaintiff and appellant.

Dean J. Haas (argued), Asst. Atty. Gen., North Dakota Workers' Compensation Bureau, Bismarck, for defendant and appellee.

ERICKSTAD, Chief Justice.

Roger Thompson appeals from a district court judgment affirming a decision by the North Dakota Workers' Compensation Bureau awarding him rehabilitation benefits but suspending the benefits during his noncompliance with a rehabilitation plan. We affirm.

In August 1986, Roger suffered a back injury while employed as a construction worker. The Bureau accepted Roger's claim and began paying him disability benefits on August 19, 1986. Roger underwent a partial hemilaminectomy on September 4, 1986, and a lateral mass fusion on January 8, 1987. On August 18, 1987, Roger's treating physician, Dr. Charles Dahl, released Roger for sedentary work. Because Roger's injury prevented him from returning to construction work, he was referred for vocational rehabilitation services.

Alan McCurry, a vocational consultant, proposed a rehabilitation plan which required Roger to pursue a two-year degree in business administration and management at Bismarck State College. The Bureau prepared a "rehabilitation contract," [1]

---

**1.** At that time Section 65–05.1–05, N.D.C.C., provided:

which authorized Roger to attend Bismarck State College from January 4, 1988 through December 30, 1989. However, the parties did not agree to the terms of the rehabilitation contract, and neither party signed the contract. Nevertheless, Roger began attending classes at Bismarck State College in January 1988, and the Bureau provided him with a rehabilitation allowance. Roger continued to experience back problems and he withdrew from all but one of his classes. In August 1988, Roger returned to Bismarck State College; however, he experienced more back problems, and in February 1989, McCurry advised him to quit school.

On June 24, 1989, Dr. Dahl reported that Roger had a non-union of the fusion. Roger received the same diagnosis from Dr. David Arnold, who reported that additional surgery could alleviate the pain but "should be pursued only if [Roger's] pain is of enough significance and disability in [his] life to warrant the risks." Roger elected not to have additional surgery.

In October 1989, Dr. Dahl informed Roger's new vocational consultant, Lori DeRemer, that Roger had reached "maximum medical improvement." Jeanne Dekrey, a physical therapist, administered a functional capacities assessment at DeRemer's request, and concluded that Roger qualified for work in the "sedentary category" with lifting restrictions of ten pounds or less. Dekrey also concluded that Roger was restricted from "climbing and balancing" and from "stooping or forward bending activities" and that he required work in a place where he could "intermittently and self-pacedly change his sitting or standing posture." Dr. Dahl agreed with Dekrey's functional capacities assessment, but commented that the ten-pound lifting restriction seemed excessive and suggested a twenty to twenty-five pound restriction on an infrequent basis.

In March 1990 DeRemer completed a vocational assessment and recommended a rehabilitation plan for Roger which identified a business management program at Bismarck State College from June 4, 1990 through July 25, 1991. Roger objected to the plan, asserting that he was physically unable to attend class full-time. On March 30, 1990, the Bureau issued an order awarding rehabilitation benefits under that plan. Roger petitioned for a hearing.

Although Roger did not initially attend classes at Bismarck State College pursuant to the March 1990 plan, his benefits were not suspended pending the hearing. After a hearing, the Bureau found that the March 1990 plan complied with Chapter 65–05.1, N.D.C.C., as amended in 1989, and suspended Roger's benefits, effective November 21, 1990. On January 8, 1991, Roger enrolled at Bismarck State College and his benefits were reinstated from that date through July 25, 1991.

Roger appealed to the district court, contending that the March 1990 plan was not valid under either the 1987 or 1989 versions of Chapter 65–05.1, N.D.C.C., and that upon rehabilitation, he was entitled to partial disability benefits under the 1987 law.[2]

---

*"Rehabilitation contract.* In the event that the bureau shall determine that it is necessary to provide a rehabilitation program to a claimant to comply with the purpose of this chapter, the bureau shall enter into a contract with the claimant. The contract shall provide for, but not be limited to:

"1. A description of the rehabilitation program to include the actual time, place, cost, and other significant data involved in the particular program.

"2. The equipment and tools necessary for the training and vocational performance and the ownership thereof.

"3. The amount of rehabilitation allowance to be paid to the claimant and the manner in which the allowance is to be disbursed.

"4. The claimant's faithful performance of the terms of the contract.

"The bureau shall provide attorney fees to the claimant's attorney, in an amount as established by rule of the bureau, from the bureau's general fund for the purpose of effecting the contract."

**2.** The 1987 version of Chapter 65–05.1, N.D.C.C., required the Bureau and claimant to enter into a rehabilitation contract; did not restrict the length of time a claimant could receive partial disability benefits after completing a rehabilitation program; did not define the extent to which an injured worker's earning capacity must be rehabilitated following retraining; and did not specify a maximum duration for a rehabilitation program.

The district court affirmed the Bureau's decision, concluding that the 1989 law applied and that the March 1990 rehabilitation plan complied with that law. Roger appealed.

■ Our scope of review of the Bureau's decision is governed by Section 28–32–19, N.D.C.C. We must affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. *Schiff v. North Dakota Workers Compensation Bureau,* 480 N.W.2d 732 (N.D. 1992). In reviewing the Bureau's findings of fact, our analysis is limited to whether a reasoning mind could have reasonably determined that its findings were proved by the weight of the evidence from the entire record. *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214 (N.D.1979).

■ Roger argues that his rights under the 1988 rehabilitation contract had vested and those contractual rights could not be impaired by the 1989 amendments to Chapter 65–05.1, N.D.C.C. The Bureau responds that the 1989 amendments apply to Roger's rehabilitation award because he did not sign the 1988 rehabilitation contract and he therefore did not have a vested right to rehabilitation under that contract.

■ Unless otherwise provided, the statutes in effect on the date of an injury govern workers' compensation benefits. *Gregory v. North Dakota Workmen's Compensation Bureau,* 369 N.W.2d 119 (N.D.1985). *See Leahy v. St. Mary's Hospital,* 339 N.W.2d 265 (Minn.1983) [unless statute provides otherwise, rehabilitation

benefits are governed by statute in effect on date of injury]. The 1989 amendments to Chapter 65–05.1, N.D.C.C., provide that "[t]he duties, responsibilities, and benefits available under this Act apply to all awards of vocational rehabilitation services made on or after July 1, 1989, irrespective of injury date." 1989 N.D.Sess.Laws ch. 771, § 7. Although that language indicates that the 1989 amendments apply to all rehabilitation awards made after July 1, 1989, it is well established that statutory amendments may not operate retrospectively to abrogate contractual or vested rights. *Fairmount Township Board of Supervisors v. Beardmore,* 431 N.W.2d 292 (N.D.1988); *Manikowske v. North Dakota Workmen's Compensation Bureau,* 338 N.W.2d 823 (N.D.1983). In *Dunham Lumber Co. v. Gresz,* 71 N.D. 491, 2 N.W.2d 175, 179 (1942), we defined a vested right as "an immediate or fixed right to present or future enjoyment and one that does not depend upon an event that is uncertain." Vested rights include rights created by contract. *Id.* We therefore consider whether or not the 1989 amendments to Chapter 65–05.1, N.D.C.C., retrospectively abrogated Roger's contractual rights.

■ Pursuant to Section 65–05.1–05, N.D.C.C. [*see* fn. 1], the Bureau prepared a written rehabilitation contract which authorized Roger to attend Bismarck State College from January 4, 1988, through December 30, 1989, to obtain a two-year degree in business administration and management. Under Section 9–06–04(1), N.D.C.C., an agreement which by its terms cannot be performed within one year is invalid unless it is in "writing and subscribed by the party to be charged." If there is a possibil-

In *Smith v. North Dakota Workers Compensation Bureau,* 447 N.W.2d 250 (N.D.1989), a majority of this court observed that the 1987 law required an injured worker to be "substantially rehabilitated," and construed that term to mean rehabilitation within ten percent of the worker's pre-injury earning capacity. The *Smith* majority also held that, under the circumstances of that case, the Bureau's award of a two-year rehabilitation program was not supported by a preponderance of the evidence because it would not allow the claimant to return to work at

ninety percent of the claimant's pre-injury earning capacity.

The 1989 amendments to Chapter 65–05.1, N.D.C.C., repealed the requirement for a rehabilitation contract [1989 N.D.Sess.Laws ch. 771, § 6]; established a maximum five-year limit for partial disability benefits upon completion of a rehabilitation program [*Id.* at § 5]; and established a formula for determining the extent to which a worker's earning capacity must be rehabilitated after retraining. *Id.* at § 1.

ity that an agreement may be performed within one year, the agreement does not have to be in writing and subscribed by the party to be charged. *E.g., Delzer v. United Bank of Bismarck,* 459 N.W.2d 752 (N.D.1990). The party to be charged means the party against whom the agreement is sought to be enforced. *Hagen v. Schluchter,* 126 N.W.2d 899 (N.D.1964); *Petroleum Exchange v. Poynter,* 64 N.W.2d 718 (N.D.1954).

In this case, the parties did not agree to the terms of the 1988 rehabilitation contract prepared by the Bureau, and neither party signed that written contract. By its own terms, that written contract specified that it would take two years to perform. Section 9–06–04(1), N.D.C.C., therefore required that rehabilitation contract to be in "writing and subscribed by the party to be charged" in order to be valid. Because neither party signed that rehabilitation contract, it is invalid under Section 9–06–04(1), N.D.C.C.

▄▄▄ Roger nevertheless argues that the parties' conduct and part performance established a contract. Generally, part performance of a contract which is consistent only with the existence of the contract may remove it from the statute of frauds.[3]

*Williston Co-op. Credit Union v. Fossum,* 459 N.W.2d 548 (N.D.1990); *Buettner v. Nostdahl,* 204 N.W.2d 187 (N.D.1973), *overruled on other grounds, Shark v. Thompson,* 373 N.W.2d 859 (N.D.1985).

In this case, the Bureau prepared a two-year written rehabilitation contract which Roger admits that he did not sign. Roger's refusal to sign the contract prepared by the Bureau is not indicative of conduct consistent only with the existence of a contract. *Buettner v. Nostdahl, supra.* Instead, Roger's refusal to sign that contract indicates conduct that is inconsistent with the existence of an agreement between the parties. We believe it is inconsistent for Roger to argue that part performance of a written contract that he did not sign removes that contract from the statute of frauds. *See Heinrich v. Martin,* 134 N.W.2d 786 (N.D.1965) [a written offer to sell land signed by the vendor does not remove contract from the statute of frauds if the vendee does not accept it]. Under these circumstances, we conclude that the 1988 rehabilitation contract was not binding. The 1989 amendments to Chapter 65–05.1, N.D.C.C., therefore did not impair Roger's contractual rights.[4] We thus con-

**3.** We also observe that the general rule is that under provisions similar to Section 9–06–04(1), N.D.C.C., contracts which cannot be performed within one year are not taken out of the statute of frauds by part performance. *Pemberton v. Ladue Realty & Construction Co.,* 362 Mo. 768, 244 S.W.2d 62 (1951); *McBride v. City of McCook,* 212 Neb. 112, 321 N.W.2d 905 (1982); *Cunnison v. Richardson Greenshields Securities, Inc.,* 107 A.D.2d 50, 485 N.Y.S.2d 272 (N.Y.App. Div.1985); 72 Am.Jur.2d, *Statute of Frauds,* § 18 (1974); 73 Am.Jur.2d, *Statute of Frauds,* § 505 (1974); 37 C.J.S., *Statute of Frauds,* § 254 (1943); Annot., *Performance as taking contract not to be performed within a year out of the statute of frauds,* 6 A.L.R.2d 1053 (1949). However, that general rule is subject to an exception for cases involving real estate. 37 C.J.S., *Statute of Frauds,* § 254 (1943).

Thus, in *Cooke v. Blood Systems, Inc.,* 320 N.W.2d 124 (N.D.1982), we said that under a different provision of the statute of frauds, current Section 9–06–04(3), N.D.C.C., part performance of an oral agreement to lease property for longer than one year may bar the assertion of the statute of frauds as a defense. In *Cooke* the lessor, Cooke, and the lessee, Blood Systems, exchanged written leases, but the party to be

charged, Blood Systems, did not sign any of the leases. We observed that Cooke and Blood Systems had not entered into a written contract to lease the property, and we held that the factual circumstances did not evidence a definite oral agreement between the parties. Because there was no definite oral agreement between the parties, we thus rejected Cooke's argument that part performance of the alleged oral agreement barred Blood Systems' assertion of the statute of frauds as a defense.

This case does not involve real estate. Moreover, because we decide this part performance issue on other grounds, we need not decide whether or not the 1988 rehabilitation contract, which cannot be performed in one year, can be taken out of the statute of frauds by part performance under Section 9–06–04(1), N.D.C.C.

**4.** Roger's argument is that he has a vested right because of the rehabilitation contract, and he has not argued that he has a vested right to rehabilitation under the law in effect on the date of his injury. *See Gregory v. North Dakota Workmen's Compensation Bureau,* 369 N.W.2d 119 (N.D.1985).

Rehabilitation determinations are made after a claimant has reached maximum medical re-

clude that the Bureau's rehabilitation award was governed by the 1989 amendments to Chapter 65–05.1, N.D.C.C.

 Roger also argues that the Bureau failed to follow the 1989 amendments. He asserts that the Bureau failed to establish a medical assessment team as required by Section 65–05.1–02(6), N.D.C.C.

Section 65–05.1–02(6), N.D.C.C., requires the Bureau to establish a medical assessment team on a case-by-case basis to determine the worker's physical restrictions and limitations. The plain language of the statute allows the Bureau to determine the composition of the medical assessment team on a case-by-case basis. In this case the Bureau relied upon Roger's treating physician, Dr. Dahl, and a functional capacities assessment performed by Jeanne Dekrey, a physical therapist. Dr. Dahl also reviewed the functional capacities assessment performed by Dekrey. The Bureau's reliance on Dr. Dahl and Dekrey complied with the statutory requirement to establish a medical assessment team on a case-by-case basis.

 Roger also contends that the Bureau did not provide him with "comprehensive rehabilitation services ... [including] medical, psychological, economic, and social

rehabilitation [to return him to] substantial gainful employment [that] is reasonably attainable in light of [his] injury, medical limitations, age, education, previous occupation, experience, and transferable skills" as required by Section 65–05.1–01, N.D.C.C.[5]

Section 65–05.1–01(3), N.D.C.C., describes the goals of vocational rehabilitation

"to return the disabled employee to substantial gainful employment with a minimum of retraining, as soon as possible after an injury occurs. 'Substantial gainful employment' means bona fide work, for remuneration, which is reasonably attainable in light of the individual's injury, medical limitations, age, education, previous occupation, experience, and transferable skills, and which offers an opportunity to restore the employee as soon as practical and as nearly as possible to the employee's average weekly earnings at the time of injury, or to seventy-five percent of the average weekly wage in this state on the date the rehabilitation consultant's report is issued under section 65–05.1–02.1, whichever is less. The purpose of defining substantial gainful employment in terms of earnings is to determine the first appropriate priority option

covery. Roger has not demonstrated that he has a vested right to rehabilitation under the law in effect on the date of his injury because, under the definition of "vested right" in *Dunham Lumber Co. v. Gresz,* 71 N.D. 491, 2 N.W.2d 175, 179 (1942), there is no "immediate or fixed right to present or future enjoyment and one that does not depend upon an event that is uncertain."

5. Roger also argues that the Bureau did not provide him with physical and emotional support, including hydrotherapy, for his pain. The Bureau's March 30, 1990 rehabilitation award provided:

"IT IS ORDERED that medical expenses directly related to claimant's injury on August 19, 1986, continue to be paid by the Bureau;

"IT IS FURTHER ORDERED that the terms of this order shall not affect claimant's entitlement to a permanent partial impairment award;

\* \* \* \* \* \*

"IT IS FURTHER ORDERED that claimant is not eligible for rehabilitation benefits beyond those provided for by the terms of this order;

"IT IS FURTHER ORDERED that absent a significant change in medical condition attributable to work injury, and upon completion of vocational rehabilitation retraining, claimant shall not be eligible for further total disability benefits, as claimant shall have been deemed employable within the chosen vocation;

"IT IS FURTHER ORDERED that following completion of vocational rehabilitation retraining, claimant shall remain eligible to receive partial disability benefits pursuant to N.D.C.C. § 65–05.1–06.1;"

The district court observed:

"The issue of whether the plaintiff can continue to receive rehabilitation services is still open. The Bureau has stated that the claimant need only apply to attend desired treatment or necessary medical care, and if that is true, the same will be compensated."

The Bureau does not dispute that observation and there is nothing in this record to contradict the district court's statement. *See Lass v. North Dakota Workmen's Compensation Bureau,* 415 N.W.2d 796 (N.D.1987).

under subsection 4 of section 65–05.1–04 which meets this income test."

Section 65–05.1–01(4), N.D.C.C., establishes the priorities for returning an employee to substantial gainful employment:

"4. The first appropriate option among the following, calculated to return the employee to substantial gainful employment, must be chosen for the employee:

"a. Return to the same position.

"b. Return to a modified position.

"c. Return to a related occupation in the local job pool which is suited to the employee's education, experience, and marketable skills.

"d. Return to a related occupation in the statewide job pool which is suited to the employee's education, experience, and marketable skills.

"e. On-the-job training.

"f. Short-term retraining of fifty-two weeks or less.

"g. Long-term retraining of one hundred four weeks or less.

"h. Self-employment."

In this case, there was evidence of a labor market survey which identified the availability of sedentary work within the range of income in Section 65–05.1–01(3), N.D.C.C. There was also evidence regarding the placement statistics for individuals graduating from Bismarck State College. DeRemer testified that, based upon the job placement statistics and the labor market survey, Roger had a reasonable expectation of finding employment within his physical restrictions and the statutory range of income when he completed the rehabilitation plan at Bismarck State College.

The Bureau found:

"X.

"The evidence indicates that the vocational opportunities available to claimant upon completion of the rehabilitation plan would be sedentary in nature and will meet claimant's physical restrictions and limitations. Moreover, the evidence indicates that the rehabilitation retraining plan meets the requirements of N.D.C.C. Ch. 65–05.1 in returning claimant to substantial gainful employment. Claimant's income potential upon completion of the plan can be roughly approximated at $10.00 per hour. This income potential meets the income test of N.D.C.C. Ch. 65–05.1.

"XI.

"Upon completion of training claimant will be able to compete for a competitive gainful employment within his physical restrictions and limitations. Claimant will be able to obtain employment at an income which will rehabilitate his earnings capacity to that required by Chapter 65–05.1.

"XII.

"The rehabilitation plan approved by the Bureau meets the criteria of Chapter 65–05.1 in that the school and the job opportunities upon completion of school are within claimant's physical abilities to perform. Moreover, the wage will substantially rehabilitate claimant's earnings capacity.

"XIII.

"Claimant has discontinued attending Bismarck State College without showing good cause. Claimant does not have a medical excuse. There is no medical evidence that claimant is unable to continue his schooling. Claimant's own testimony in that regard is inconsistent with medical evidence. Moreover, the school requires perhaps 15 hours per week of in-class attendance and studying. It is not credible that claimant is unable to attend 15 hours of class per week. I therefore find claimant to be in noncompliance with his vocational rehabilitation plan. Claimant's benefits must be suspended during the period of noncompliance."

■ The Bureau's rehabilitation plan does not guarantee Roger a job upon completion of the program. However, Chapter 65–05.1, N.D.C.C., does not require that degree of certainty because factors outside the rehabilitation process affect the ulti-

mate hiring decision. Here, there was evidence from which a reasoning mind could have reasonably concluded that the rehabilitation plan would return Roger to substantial gainful employment which was reasonably attainable in light of his injury and which would substantially rehabilitate his earning capacity, as required by Chapter 65–05.1, N.D.C.C. We conclude the Bureau's findings are supported by a preponderance of the evidence and the plan complies with the requirements of Chapter 65–05.1, N.D.C.C.

Roger also argues that he has not been afforded sure and certain relief and that he should be entitled to select between the compensation authorized by the Bureau and litigation against his former employer.

However, it is well established that the workers' compensation act precludes an employee from suing an employer for accidental injuries. Sections 65–01–01, 65–01–08, 65–04–28, and 65–05–06, N.D.C.C. *E.g.*, *Westman v. Dessellier*, 459 N.W.2d 545 (N.D.1990); *Schreder v. Cities Service Company*, 336 N.W.2d 641 (N.D.1983). Roger has presented no persuasive argument, or citation to authority, to overturn well-established precedent.

We affirm the district court judgment.

VANDE WALLE, JOHNSON and LEVINE, JJ., concur.

MESCHKE, Justice, concurring.

Thompson's efforts at rehabilitation before the 1989 amendments were fitful. The Bureau found that Thompson "discontinued his [1987] retraining program at Bismarck State College due to back problems" and that he "returned to Bismarck State College in August 1988." Upon the advice of a Bureau vocational consultant, Alan McCurry, Thompson discontinued schooling again in February 1989, while he was undergoing further medical evaluation. The Bureau made no findings about the reason for this discontinuation. Eventually, on March 30, 1990, the Bureau imposed a new rehabilitation plan in keeping with changed rehabilitation services spelled out in section 5 of the 1989 Act. Thus, the Bureau's handling of Thompson's rehabilitation has also been erratic.

Nowhere did the Bureau determine that Thompson had not entered into a "rehabilitation contract" or that he had withdrawn from the initial rehabilitation program without good cause. *See* NDCC 28–32–13 ("[T]he agency shall make and state concisely and explicitly its findings of fact and its separate conclusions of law...."). Still, on appeal, the Bureau argues, without supporting findings, that Thompson "refused to sign the rehabilitation contract ... and he withdrew from the training program." *See Evans v. Backes*, 437 N.W.2d 848 (N.D. 1989) (Remand to agency for failure to make critical finding). For those undeveloped reasons, the Bureau says it "reinstated benefits, and was forced to re-evaluate Thompson's rehabilitation potential." *Compare Smith v. North Dakota Workers Compensation Bureau*, 447 N.W.2d 250, 253 at n. 2 (N.D.1989) (Applying 1987 Rehabilitation Services Chapter to a claimant injured in 1984 who was awarded rehabilitation services in 1987 but did not sign a written contract before 1989 amendments became effective). Without adequate findings on the relevant circumstances, I question whether we should decide that there was not an enforceable rehabilitation contract.

Thompson worries that the new rehabilitation plan may limit partial disability benefits after his retraining, if his medical condition still limits the kind of sedentary work that he can do. *See* 1989 N.D.Laws, ch. 771, § 5(2)(i)(5). Understandably, Thompson seeks to preserve his "rights" under the earlier version of the Rehabilitation Services Chapter that did not restrict partial disability benefits after retraining.

There can be a vested right to disability payments under the Workers' Compensation Act when a claimant remains disabled from a job injury. 81 Am.Jur.2d *Workmen's Compensation* § 18 (1976) ("[A]ny legislation which purports to change a substantial term of a contract operative at the time of the plaintiff's injury would impair the obligation of such contract and fall within the ban of the Constitution.") *Com-*

*pare Gregory v. North Dakota Workmen's Compensation Bureau*, 369 N.W.2d 119, 121 (N.D.1985) ("The Bureau argues that ... all rights to recover benefits vest on the date of injury....") Yet, Thompson seems to confuse a vested right to benefits while disabled with some perceived right to remain disabled without regard to rehabilitation. By the same token, the Bureau seems to confuse the potential of rehabilitation with actual rehabilitation. In today's parlance, both Thompson and the Bureau need to "get real."

Despite my misgivings, and because the Bureau has reasonably determined that Thompson is an appropriate candidate for rehabilitation, I tentatively concur in affirming the Bureau's presently stated intention to apply the amended Rehabilitation Benefits Chapter. *Compare Mullins v. North Dakota Department of Human Services*, 483 N.W.2d 160, 166 (N.D.1992) ("[I]t is not presently possible to judicially address [a claimant's] anxieties" about future benefits). I write separately to express my understanding about the very limited relevance of the Bureau's stated intention.

The goal of rehabilitation is to save employers and society from the long-term cost of supporting an employee made useless by a permanent disability. This worthy purpose has been promoted by authorizing additional short-term investments to educate and to restore a handicapped but promising employee to usefulness through substantial gainful employment. Both the original Rehabilitation Services Chapter and its 1989 amendments authorized comprehensive rehabilitation services "to assist the claimant and the claimant's family in the adjustments required by the injury...." NDCC 65–05.1–01. The 1989 amendments to the Act made explicit the goal of returning "the disabled worker to substantial gainful employment with a minimum of retraining, as soon as possible after an injury occurs." 1989 N.D.Laws, ch. 771, § 1(3). In other respects, the 1989 amendments changed procedures, delineated the worker's responsibilities, and detailed some of the services to be used in future rehabilitation efforts. But, until it is accomplished, the Act's goal of rehabilitation is only a purpose, not a reality.

Because the Bureau's findings and conclusions about Thompson's potential rehabilitation are only prognostic, today's decision cannot be final and conclusive on future benefits for Thompson. *See Lass v. North Dakota Workmen's Compensation Bureau*, 415 N.W.2d 796 (N.D.1987) (Act did not permit Bureau, in denying present benefits, to deny future benefits that are based upon change in claimant's condition). *See also* n. 5 of Chief Justice Erickstad's opinion for the majority. Benefits for Thompson in the future must depend upon the results of his rehabilitation in light of his impaired condition, not upon the Bureau's hopeful predictions.