Edwin **HELD**, Claimant and Appellant,

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU,** Appellee,

and

**OK Tire Store, Respondent.**

**Civ. No. 950158.**

Supreme Court of North Dakota.

Nov. 30, 1995.

Kathryn L. Dietz (argued), of Dietz & Little, Bismarck, for claimant and appellant.

Lawrence A. Dopson (argued), Special Assistant Attorney General, of Zuger Kirmis & Smith, Bismarck, for appellee.

NEUMANN, Justice.

Edwin Held appeals from a district court judgment which affirmed a Workers Compensation Bureau decision awarding him vocational rehabilitation benefits. We affirm.

Held hurt his back in June 1990 while employed as an auto service technician at O.K. Tire Store in Bismarck. The Bureau accepted Held's claim and paid medical and disability benefits. Held returned to work but reinjured his back in October 1992. He was unable to return to his prior job. His treating physician recommended vocational rehabilitation services.

A vocational consultant recommended, as the first appropriate rehabilitation option, long-term retraining of 104 weeks or less under N.D.C.C. § 65–05.1–01(4). The consultant advised that, because of Held's physical restrictions and limitations, and his abilities, interests and specifications, including his preference to remain in North Dakota, especially in the Bismarck–Mandan area, an 18–month accounting clerk program at Interstate Business College (IBC) would be an appropriate retraining plan. Held's physician approved him as physically capable of working as an accounting clerk. The Bureau approved the consultant's report on April 15, 1994, and Held requested a rehearing. Held continues to attend IBC classes while receiving a rehabilitation allowance and expects to graduate in December 1995.

Following a hearing, the hearing officer upheld the Bureau's order. The hearing officer noted that although Held "is unhappy with the Bureau's selection of the accounting program at IBC," Held "is doing fairly well in the program." The hearing officer found Held "has the functional capacity to complete the accounting program at IBC and ... to be employed in the accounting field" and that "a good job in the accounting field would come reasonably close to Held's physical restrictions and limitations." The hearing officer further found "the accounting clerk field for which Held is being trained will likely have employment which will be reasonably attainable upon his graduation from IBC." The hearing officer found "a reasonable expectation that employment will be available for Held either locally or statewide that will entail an earning capacity of at [least] $268.50" per week. The Bureau adopted the hearing officer's findings of fact and conclusions of law. Held appealed to the district court, which affirmed the Bureau's order.

Held claims on appeal that the rehabilitation plan ordered by the Bureau is invalid because it will not return him to "substantial gainful employment" under N.D.C.C. § 65–05.1–01(3).

■ We must affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. *Fischer v. Workers Comp. Bureau,* 530 N.W.2d 344, 346 (N.D. 1995).

■ The purpose of a vocational retraining program is to substantially rehabilitate a worker to his pre-injury earning capacity. *Smith v. N.D. Workers Comp. Bureau*, 447 N.W.2d 250, 254 (N.D.1989). The version of N.D.C.C. § 65–05.1–01(3) applicable to this case provided:

"It is the goal of vocational rehabilitation to return the disabled employee to substantial gainful employment with a minimum of retraining, as soon as possible after an injury occurs. 'Substantial gainful employment' means bona fide work, for remuneration, which is reasonably attainable in light of the individual's injury, medical limitations, age, education, previous occupation, experience, and transferable skills, and which offers an opportunity to restore the employee as soon as practical and as nearly as possible to the employee's average weekly earnings at the time of injury, or to seventy-five percent of the average weekly wage in this state on the date the rehabilitation consultant's report is issued under section 65–05.1–02.1, whichever is less. The purpose of defining substantial gainful employment in terms of earnings is to determine the first appropriate priority option under subsection 4 of section 65–05.1–04 which meets this income test." [1]

■ A rehabilitation plan cannot guarantee an injured worker a job upon completing a retraining program. *Thompson v. N.D. Workers' Comp. Bureau*, 490 N.W.2d 248, 254 (N.D.1992). Because factors outside the rehabilitation process affect the ultimate hiring decision, N.D.C.C. Chapter 65–05.1 does not require certainty. *Thompson*, 490 N.W.2d at 254–255. We will not reverse the Bureau's selection of a rehabilitation plan under N.D.C.C. Chapter 65–05.1 if there is "evidence from which a reasoning mind could have reasonably concluded that the rehabilitation plan would return [the worker] to substantial gainful employment which was reasonably attainable in light of his injury and which would substantially rehabilitate his

earning capacity...." *Thompson*, 490 N.W.2d at 255.

Held asserts the IBC accounting clerk vocational plan approved by the Bureau failed to fulfill three requirements of N.D.C.C. § 65–05.1–01(3) because: (1) there will be no bona fide jobs reasonably attainable if he completes retraining; (2) the jobs reasonably attainable will not pay at least $268.50 per week, which the parties stipulated was 75 percent of the state's average weekly wage at the time the rehabilitation consultant's report was issued; and (3) he does not have the physical ability to work successfully and competitively as an accounting clerk. We disagree.

■ The record supports the Bureau's finding that the accounting clerk field for which Held is being trained at IBC will likely have employment which would be reasonably attainable upon his graduation. To support its position, the Bureau essentially relied on IBC employment placement statistics from 1990 through 1993, a Job Service North Dakota "B 96" report for the second half of 1993, and a Job Service North Dakota Job Order Index for a three-week period in March 1994. IBC accounting program placement statistics showed that nine of ten 1990 graduates, five of five 1991 graduates, five of five 1992 graduates who were available for employment, and seven of seven 1993 graduates, were all working in an accounting-related field. The "B 96" report indicated there were 44 openings for accounting clerks in North Dakota in the last half of 1993. The Job Order Index showed 23 available positions in accounting and bookkeeping. The vocational consultant further estimated the Job Service figures could be 20 percent higher because not all employers with job openings contact Job Service. We conclude the preponderance of the evidence supports the Bureau's finding.

■ Held's argument that the Bureau has not shown the jobs available to him after

---

1. N.D.C.C. § 65–05.1–01(3) was amended by the legislature to define "substantial gainful employment" as bona fide work offering an opportunity to restore the employee "as nearly as possible to ninety percent of the employee's average weekly earnings at the time of injury, or to sixty-six and two-thirds percent of the average weekly wage in this state on the date the rehabilitation consultant's report is issued ..., whichever is less." 1995 N.D. Sess. Laws Ch. 628 § 2.

graduation will guarantee him $268.50 per week is also faulty. Held asserts that only one IBC accounting graduate met this "weekly wage threshold" during the three-year statistical period and that the average of the 1993 graduates should have been used. He computes the average for those graduates at $250.09 per week rather than the $263.50 arrived at by the Bureau, and because the average in either case falls below the $268.50 figure, Held contends the rehabilitation plan fails.

Held misconstrues N.D.C.C. § 65–05.1–01(3) by suggesting that a failure to establish to a certainty that he will earn the statute's "weekly wage threshold" to the penny invalidates the rehabilitation plan. "Substantial gainful employment" is defined in part in N.D.C.C. § 65–05.1–01(3) as bona fide work "which *offers an opportunity* to restore the employee *as soon as practical* and *as nearly as possible* to the employee's average weekly earnings at the time of injury, or to seventy-five percent of the average weekly wage in this state ..., whichever is less." (Emphasis added). Although Held asserts that the "as nearly as possible" language does not modify the 75 percent of the average weekly wage element, we harmonize statutes on the same subject, if possible, to give full force and effect to the legislature's intent. *See, e.g., City of Fargo v. Stutlien,* 505 N.W.2d 738, 742 (N.D.1993). The legislature has specifically recognized the possibility that "substantial gainful employment" might not be reached immediately upon completion of a retraining program and, rather than allowing this possibility to invalidate a rehabilitation plan at the outset, has provided for payment of partial disability benefits for up to one year if this should occur. *See* N.D.C.C. § 65–05.1–06.1(2)(i).[2] Just as a rehabilitation plan cannot guarantee a job, neither can it guarantee a predetermined weekly wage. We conclude N.D.C.C. § 65–05.1–01(3) requires only that the job market present an "opportunity" for Held to obtain a salary that comes "as nearly as possible" to the $268.50 average weekly wage.

That one IBC accounting graduate exceeded the $268.50 weekly amount alone suggests the job market will provide Held an opportunity to obtain a wage above that figure. Additional statistical data presented at the hearing also supports the Bureau's finding. The United States Department of Labor "Occupational Outlook Handbook" estimated the average weekly wage in 1991 for bookkeeping, accounting, and auditing clerks to be $338. The Job Order Index showed several accounting job openings providing a weekly salary higher than the $268.50 figure. The 1993 edition of the Bismarck–Mandan Wage and Benefit Survey indicated the average starting salary for accounting clerks was approximately $280 per week. A reasoning mind reasonably could have concluded from the evidence that the rehabilitation plan offers an opportunity to restore Held's wages as nearly as possible to $268.50 per week.

We also reject Held's attack on the Bureau's finding that he has the physical ability to be employed as an accounting clerk. Although Held's physician said Held could sit up to 30 minutes at a time and would then need to change positions, Held offered no evidence that this sitting restriction would affect his performance as an accounting clerk. Nor did Held present medical evidence that he would be unable to physically perform work as an accounting clerk. *See Schiff v. N.D. Workers Comp. Bureau,* 480 N.W.2d 732, 734–735 (N.D.1992). Indeed, Held's treating physician specifically approved the goal of becoming an accounting clerk. The Bureau's finding that Held could physically perform duties as an accounting clerk is supported by the preponderance of the evidence.

The Bureau's findings of fact are supported by a preponderance of the evidence, its conclusions of law are supported by its findings of fact, its decision is supported by its conclusions of law, and its decision is in accordance with the law. The judgment is affirmed.

VANDE WALLE, C.J., and LEVINE and MESCHKE, JJ., concur.

---

2. Held's continuing eligibility to receive these partial disability benefits was expressly noted in the Bureau's original April 15, 1994 order awarding benefits.

SANDSTROM, Justice, concurring specially.

In an appeal from the decision of an administrative agency, N.D.C.C. § 28–32–15(4) requires the appealing party to file "specifications of error." The appealing party is limited on appeal to those issues identified in the specifications of error with sufficient specificity to fairly appraise the agency and other parties of the particular errors claimed. *See Berger v. State Highway Commissioner,* 394 N.W.2d 678, 686 (N.D.1986); *Wisdom v. State ex rel. North Dakota Real Estate Commission,* 403 N.W.2d 19, 22 (N.D.1987).

Held's boilerplate "specifications of error" are so general they could apply to any administrative agency appeal. They fail to specifically identify any error with any particularity. Because Held's specifications of error failed to identify any error with sufficient specificity, I would summarily affirm the agency.

VANDE WALLE, C.J., concurs.